BENJAMIN F. DE KLYN, Respondent, *v.* JOSEPH H. SIMPSON, SIMPSON's, Defendants, and ANNIE W. GOULD, Appellant.

*Mechanic's lien — covenant in a lease that the tenant will make certain specified*
*changes does not imply a consent that other and additional changes may be made —*
*authority of the lessor's husband to give such consent — notice of lien in which a*
*claim is made only against the tenant.*

A tenant of premises holding under a lease providing that he shall make certain specified changes therein which shall belong to the party of the first part (the lessor) "from the time they are so made, so that no part of the same shall be removed during or at the expiration of the said term, and no changes shall be made in said premises after such changes and improvements have been made, without the written consent of the party of the first part first had and obtained,"

and containing a further covenant that the tenant will not assign the lease unless with the written consent of the lessor, entered into an agreement with a corporation without having himself undertaken the repairs, that he would endeavor to procure the consent of the lessor to an assignment of the lease to it, and that upon obtaining such consent he would so assign it. Under such agreement the corporation took possession of the premises, and executed a contract for the making of other and more extensive alterations than those mentioned in the lease.

In an action brought to foreclose a mechanic's lien for a balance due on the contract,

*Held*, that the lease could not be construed as implying a consent to such other and further alterations, within the meaning of section 1 of chapter 342 of the Laws of 1885, and thus authorizing the filing of the lien, there being no evidence that the lessor, although she was frequently on the street and saw the work in progress, ever assented to an assignment of the lease or knew of the agreement between her tenant and the corporation, or that the latter was in possession of the premises or doing work thereon.

*Semble*, that the fact that the lessor's husband had been allowed to collect rents for her or did, as a fact, collect them, or had employed an attorney to act for her, would not justify a finding that he was authorized to consent to additional alterations or changes in the building or to the making of a contract which would charge her interest in the premises with a liability for a large sum of money.

Where, in a notice of lien, the tenant only is named as the person against whose interest the lien is claimed, the interest of the owner of the property is not affected thereby, as the provision of section 4 of the statute, that the failure to state the name of the true owner, lessee, general assignee or person in possession, shall not impair the validity of the lien, cannot have the effect of binding the interest of a person against whom no claim is made.

APPEAL by the defendant, Annie W. Gould, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 30th day of December, 1897, upon the report of a referee directing the foreclosure of a mechanic's lien.

*John E. Parsons*, for the appellant.

*David Willcox*, for the respondents.

INGRAHAM, J.:

The action was brought to foreclose a mechanic's lien for a balance due on a contract for making certain repairs and alterations in a building in which the appellant had a life estate.

The appellant's interest in this property is sought to be charged upon the claim that she consented to the repairs and alterations

provided for by the contract between the defendant corporation and the plaintiff's assignor; and one of the questions presented is whether the evidence was sufficient to sustain the finding of the referee that the plaintiff's assignor performed the labor or services, or furnished the materials used in the erection, alteration or repair of the house, "with the knowledge and consent" of the appellant.

Section 1 of chapter 342 of the Laws of 1885, the act under which the plaintiff seeks to establish a lien upon the appellant's property, provides that "Any person * * * who shall hereafter perform any labor or service, or furnish any materials which have been used or which are to be used in erecting, altering or repairing any house, * * * with the consent of the owner, as hereinafter defined, or his agent, * * * may, upon filing the notice of lien prescribed in the fourth section of this act, have a lien for the principal and interest of the price and value of such labor and material upon such house, * * * and upon the lot, premises, parcel or farm of land upon which the same may stand."

The plaintiff's assignor performed certain labor and furnished certain materials in altering and repairing a house upon the premises known as No. 54 West Twenty-third street in the city of New York, under a contract between himself and a corporation in possession of the premises. He had no contract with the appellant, and no express consent is proved. The referee found that such labor and material were furnished with the consent of the appellant, and the appellant challenges that finding as not being sustained by the evidence. By a contract dated January 14, 1893, between Simpson's, a corporation, of the first part, and P. J. Brennan, contractor, of the second part, Brennan agreed to erect and finish the building, "so far as the mason, iron and carpenter work of proposed alterations and additions of two new stories to the building No. 54 West 23d street, New York city, is concerned, agreeably to the drawings and specifications made by J. B. Franklin, architect," for the sum of $27,500, which the said corporation agreed to pay. The referee found that the premises in question were leased by the appellant to one Joseph H. Simpson by a lease dated July 18, 1892. This lease was to begin on the 1st day of May, 1893, and to continue for twelve years. By the said lease the tenant agreed that he would, "at his and their own cost and expense, make changes and improvements on the above-

named premises," which changes were specifically described in the lease, " the whole work to be done at the cost and expense of the party of the second part, his heirs, executors and administrators, and without any cost or charge to the party of the first part, and to be finished by the first day of May, in the year 1894." In the lease it was further mutually covenanted and agreed that " all the changes and improvements made on said demised premises are to be left on the premises and to accrue to the benefit and to go and belong to the party of the first part, her heirs and assigns, from the time they are so made, so that no part of the same shall be removed during or at the expiration of the said term, and no changes shall be made in said premises after such changes and improvements have been made, without the written consent of the party of the first part first had and obtained." The lease also contained a covenant on behalf of the tenant that he should not assign the lease without the written consent of the party of the first part had and obtained. After this lease was executed the tenant employed an architect to prepare plans. The architect found that the alterations specified in the lease would cost about $10,000, and recommended that additional alterations should be made. Plans were prepared for such additional alterations, which increased the cost to $17,500. Subsequently the tenant resolved to increase the height of the building and put in an elevator, so as to increase its rental value. Further plans were prepared and were shown to Mr. Gould, the husband of the appellant. Subsequently a corporation was organized, which, on January 1, 1893, took possession of the premises, under an agreement by which the tenant agreed to use his best endeavors to secure the consent of the landlord to an assignment of the lease to the corporation, and that, when such consent had been obtained, he would assign the said lease to the corporation. It does not appear that this consent was ever asked for or obtained, or that the lease was ever actually assigned to the corporation. Subsequent to the execution of this agreement the corporation made the contract with Brennan, the plaintiff's assignor, to do certain work upon such building, and under this contract Brennan did the work and furnished the materials, making the total cost of the improvement about $45,000. The corporation paid this amount, except a balance of $14,308.99, which remained due to Brennan.

The referee found that, while the work upon these premises was in progress, the appellant and her husband were frequently in the street and saw the premises in question and the work going on, and that Mr. Gould was aware of the nature of the work in progress and mentioned the matter to Mrs. Gould; that no statement was ever made to them as to the probable cost of the alterations specified in the lease; that they made no inquiries upon the subject, and made no objection to the manner in which the requirements of the lease were fulfilled; that "the defendant Annie W. Gould consented to the alteration of the building aforesaid, and the labor and materials for which this lien was filed were furnished and performed with the knowledge and consent of said defendant Annie W. Gould, and also of the defendants Joseph H. Simpson and 'Simpson's,'" and that the plaintiff was entitled to judgment against the defendants Annie W. Gould, Joseph H. Simpson and Simpson's, barring and foreclosing them of all interest and equity of redemption in and to the premises, and for a sale of all the right, title and interest which they had in and to the premises at the time of filing said lien.

The question as to what acts of an owner of real estate constitute an implied consent to the furnishing of labor or materials used in the construction of a building upon his property, within the meaning of this statute, has been discussed by the courts of this State in several late cases. A lien of this character was unknown to the common law, and while the statute giving the lien "must receive a liberal construction to secure the beneficial purposes which the Legislature had in view, it cannot be extended to a state of facts not fairly within its general scope and purview. * * * The statutory incumbrance is imposed upon real estate in such cases only when the work is performed or materials furnished in pursuance of some contract with the owner, who is sought to be charged, or whose interest is to be affected, or when his consent is in some way established." (*Spruck* v. *McRoberts*, 139 N. Y. 197.) In that case it was held that the fact that the owner of the land knew what was being done by the plaintiff, and failed to forbid or prevent him, could not be construed to be a consent within the meaning of this statute. The court said: "In the absence of proof connecting the defendant with the contract, or showing that he consented to the work, neither he nor his title is bound by what was done. When a contractor,

mechanic or material man proposes to erect a building, or to expend labor or material upon land under a contract with a person in possession, it is incumbent upon him to inquire and to assure himself of the fact that the person with whom he contemplates making the contract, or for whose benefit he is about to employ labor or materials, has in fact such an estate or interest in the land as will enable him to assert a statutory lien. If he fails to do this, or is mistaken in his calculations and contracts with a person without title, the statute does not impress a lien upon the estate of the true owner, unless he is in some way connected with the contract, or has given his consent to the expenditure in such a manner as to bind him within recognized principles of equity.". In *Hankinson* v. *Vantine* (152 N. Y. 28) it was held that because a landlord authorized a tenant to make certain specific alterations in the demised premises, without knowledge that the tenant intended to make other alterations than those mentioned, or that he was making others, his property could not be made subject to a lien for all the alterations made, upon the sole ground that he gave the written consent to make certain alterations without including in it a limitation to the effect that he was not allowed to make any alterations in addition to those expressly authorized.

In *Havens* v. *The West Side Electric Light & Power Co.* (49 N. Y. St. Repr. 771; affirmed by the Court of Appeals, without opinion, in 143 N. Y. 632), which affirmed a judgment of the Special Term for the reasons assigned at Special Term (44 N. Y. St. Repr. 589), it was held that a consent implies not merely that a person accedes to, but that he authorizes, an act; and that where the landlord of premises has leased his land to a tenant, and such tenant enters into a contract to erect a building on the premises, and where the lease contains no permission or provision giving the right to the tenant to erect or construct any building or appliance on the land, the landlord, not being in possession of the premises, could neither consent nor dissent to the erection of such building, the work having been done and the materials furnished, not with, but without, the consent of the owner, the court saying: "The most that can be said is, that Mr. Striker acquiesced, and acquiescence is not consent. We give consent when we yield what we have the right or the power to with-

hold." And at the General Term, Presiding Justice VAN BRUNT, in delivering the opinion of the court, said : "We think that the judgment appealed from should be affirmed, for the reasons assigned by him (the justice at Special Term) in his opinion. It does not seem to us that it could possibly have been the intention of the Legislature to make the owner of land, which he has leased for a long term of years, liable for improvements made upon this land for purposes of trade by his tenant. The mere fact that he may know that the tenant contemplates making certain improvements, or applying the property to certain purposes, certainly cannot make the owner liable for the moneys expended by his tenant in the doing of such work."

These cases seem to establish that a consent cannot be implied upon the sole ground that the landlord gave a consent in a lease to the tenant to make certain alterations, without including in it a limitation to the effect that he was not allowed to make any alterations in addition to those expressly authorized ; and that the fact that the owner of the land knew what was being done by the person erecting a building, or making alterations upon a building, upon his land, and failed to forbid and prevent him, could not be construed to be a consent within the meaning of this statute.

By the lease in this case the lessee agreed to make certain alterations and improvements in the premises, which were specified. This work was to be done at the expense of the tenant, and was to be without any cost or charge to the landlord. The tenant further covenanted that after such changes and improvements had been made, no change would be made in the premises without the consent of the appellant (the landlord). It seems to us quite clear that the consent contained in this lease could not be said to be a consent that the work actually done should be performed, or that the materials actually furnished should be furnished. Under it the appellant was careful to limit the tenant as to the alterations that he was allowed to make, and the tenant was required to covenant to make no other changes in the building without the written consent of the appellant. The evidence shows that the improvements contemplated by the parties when the lease was made, and which were consented to by the appellant, would cost about $10,000, and the utmost that could be said is, that the appellant consented that the

tenant should make these specified alterations and improvements, which would cost about $10,000. From the execution of such a lease, therefore, there could not be implied a consent that other and further alterations and improvements upon the building, which would impose a liability upon somebody of upwards of $45,000, were to be made. The provisions of the lease were, in effect, a consent by the landlord that the tenant should make certain specified improvements, the tenant expressly binding himself to make no other changes or alterations without the written consent of the landlord. There could, under such a covenant, be no implied consent to do what the instrument expressly provided should not be done. But the tenant who, by the lease, covenanted to make these repairs and alterations, and whose personal responsibility to the contractor making them might have been considered as an element in granting the consent, never did attempt to make the alterations, or to become personally liable for them. He entered into an agreement with a corporation that he would endeavor to procure the consent of the appellant to an assignment of the lease to the corporation, and that, upon such consent being so obtained, he would so assign it. Under that agreement the corporation took possession of the premises and made the contract with the plaintiff's assignor, who accepted such contract and performed the work under it. There is no evidence to show that the appellant had any express knowledge of this agreement between her tenant and the corporation or that she ever assented or was asked to assent to an assignment of the lease. The receipts for rent appear to have been all given to the original tenant. The corporation had no permission, express or implied, from the appellant to do any work upon the building. It was under no legal obligation to the appellant and had no contractual or other relation with her. It was from this corporation that the plaintiff's assignor accepted his contract and to it he looked for payment thereunder. The appellant, so far as appears from the record, had no knowledge that the corporation was in possession of the premises or was doing any work or furnishing any materials upon them; nor did she consent that the corporation should either be substituted as the lessee by an assignment of the lease or make the alterations required by the original lease or any other or further alterations upon the building. This corporation took possession of

the demised premises and proceeded, without the consent of the landlord, either written or verbal, to make a contract to change substantially the building and to alter its general character, which involved an expenditure of upwards of $45,000. To show a consent on the part of the appellant to proceeding under this contract, the plaintiff offered evidence of various conversations between the architect and the tenant and the appellant and her husband, and of conversations between the husband, contractor and the tenant.

The appellant is sought to be held responsible for the communications made to her husband and the knowledge that had been acquired by him. The case is barren, however, of any testimony which would justify a finding that the appellant ever created her husband her agent to consent to these alterations in the building, or that knowledge communicated to him, or statements made by him, bound the appellant. It is not claimed that he had any express authority from the appellant to bind her by any consent to the erection of a building upon the premises. She had executed the lease herself. The covenant in the lease against any additional change or alteration in the building required that her own consent in writing should be obtained ; and the fact that her husband had been allowed to collect rents for her, or did as a fact collect them, or had employed an attorney to act for her, would not justify a finding that he was authorized to consent to additional alterations or changes in the building, or to the making of a contract which would charge her interest in the premises with a liability for such a large sum of money. Her whole conduct shows that she retained control of the property and the power to say what disposition should be made of it. It could hardly be claimed that if the appellant's husband had attempted, as the agent of his wife, to convey or lease the property, the evidence before the referee would justify a finding that he was authorized to make such a conveyance or lease. The evidence does not show that any consent to these improvements was asked of the appellant or of her husband, or that they were consulted before the contract was actually executed, as to whether or not the improvements should be made. Certainly no such information was given to the appellant, nor was her consent asked to the contract as actually made or to the changes and alterations which were eventually determined upon.

There was an alleged conversation with the appellant testified to by Mr. Franklin, the architect, and several by Simpson, the tenant. The date of none of these interviews is fixed with any certainty. The contract was executed on January 14, 1893. The testimony of the architect is that he met Mrs. Gould some time before the alteration was made; "I cannot remember the date. I don't remember exactly what was said." All that the witness testified to was a recollection that the subject they were speaking about was this building, and the great improvements that were going to be made on the property; the exact words he could not remember. He adds, "I mentioned about the six-story building." He further testified that he did not remember seeing Mrs. Gould at any other time. Simpson, the tenant, testified that he saw Mrs. Gould three or four times after the lease was made; that the first interview he thought was some time in December, 1892, but he could not fix the date. "I simply told her what a nice building we were going to have, and what alterations were going to be made, and something about the cost, and she wished me luck, success, &c." He further testified that at this one interview in December, he thought he figured on the cost, that he thought "$38,000 — $45,000 we figured on." The witness was asked the following question: "What did she say to that?" He answered: "A good thing, money back, and no doubt about that — make a lot of money out of it." The witness testified that he next saw Mrs. Gould, "if at any time, once to speak to her while the building was being constructed; saw her twice afterwards while the building was being constructed; on the bridge in front of the door. I could not fix the time." He states that he saw her a third time, in the latter part of August, after the contract was completed, when she congratulated him upon having such a nice place, and that the last time he saw her was when she passed the door while he was in the store, the first year, but that he had no conversation with her at that time. This is all the testimony as to any communication with the appellant about the work, or that anything in addition to that specified in the lease was intended. Neither of these witnesses stated with any particularity the time of the interviews. They expressly say that they are not at all certain about the language that was used.

Mrs. Gould was called as a witness. She swore that when she

FIRST DEPARTMENT, NOVEMBER TERM, 1898.        [Vol. 34.

first saw the building after the commencement of the improvements, it was completed ; that she had no interviews with Simpson after the lease, until after the building was completed ; that she knew nothing about what the building was going to be, or what improvements Simpson was making in it, until after it was completed ; that the only idea she had about the improvements was formed from the lease ; that she never saw the plans of the building and was never told what the alterations would cost ; that she never knew Mr. Franklin, the architect ; never heard his name before she was called to testify ; never knew Mr. Brennan, the contractor, and never had any communication, correspondence or otherwise, with him, and that she never had the conversation with Franklin that he testified to, and the referee found that no statement was ever made to her as to the probable cost of the alterations specified in the lease.

In this condition of the evidence it seems impossible to sustain the finding of the referee that the work was done and the materials furnished for the completion of this building with the consent of the appellant. The testimony as to the two or three conversations with her is so indefinite as to time and substance that, in the face of her positive denial of such conversations or of any knowledge of the alterations which were to be made in the building, it is not sufficient to prove a consent on her part which would subject her property to an incumbrance. In the lease, as before stated, she with great care restricted the tenant as to the improvements that he should make, and required that her consent in writing be obtained for any additional alterations or changes in the building. Such consent was never asked. All the statements made to her by the two witnesses who testified to conversations with her, were incidental talks upon the premises or upon the street without apparent object and without any request of approval from her as to what was contemplated. It is not shown that she interfered in the slightest with what this corporation and its contractors proposed to do, or that she understood that what they contemplated was anything more than that provided for in the lease to which she had consented. It is not alleged that her attention was called to the fact that these proposed improvements were to be in addition to those called for by the lease, or that she was asked to consent to any modification of the provisions of the lease. Two or three casual conversations in relation

to the improvements are all that are testified to, and these she positively denies. We think that the testimony falls short of bringing home to her positive knowledge of the contract which was made, or of the contemplated improvements, from which a consent to them can be inferred. Certainly, before a person can be deemed to consent to a contract which will impose upon her property a liability of upwards of $45,000, there must be a clear statement to her of the terms of the contract or the work which is to be done, so that, with knowledge of the conditions existing at the time, she can have an opportunity of objecting and saving herself or her property from the imposition of such a liability.

As before stated, we do not think the evidence shows that Mr. Gould was authorized by the appellant to consent to the modification of the lease or to the making of this contract; but even if he was, there is no evidence to show that such a consent was given. It is true that he was informed that extensive alterations were contemplated, and of the extent of the addition to the building upon the premises; but it is nowhere alleged that he expressly approved or, assuming to act for his wife, gave any consent to the alterations or to the making of the contract. No such consent was asked of him, nor does it appear that either the plaintiff's assignor, the corporation or the tenant desired such consent or considered that it would be of any advantage to them. The knowledge that he acquired of what was going on was not communicated to him as the agent of his wife or when he was acting for her; and I do not think that such knowledge so acquired can be imputed to the appellant so as to imply from it a consent on her part that this corporation should make a contract to expend $45,000 upon this building. The evidence that the appellant went to Europe for two or three months, giving her husband a written power of attorney to act for her in her absence, would tend to show that he had not authority to act for her while she was here. On the whole case, we think the evidence fails to show that these materials were furnished or the labor performed upon these buildings with the consent of the appellant.

The appellant also objects to the notice of lien upon the ground that she is not named therein either as owner or lessee, or a person against whom the lien is claimed, or otherwise. The notice of lien states that all of said work was done and materials were furnished

at the request of the Simpson Company; that the name of the owner against whose interest the lien is claimed is the Simpson Company, and that the name of the person by whom the claimant was employed and to whom he furnished such materials is the Simpson Company. The Simpson Company is thus stated to be the employer for whom the labor was done and to whom the materials were furnished, the owner of the property, and the only person against whose interest a lien is claimed. The statute requires (§ 4) that the notice of lien shall contain, among other things, the name of the owner, lessee, general assignee, or person in possession of the premises against whose interest a lien is claimed, but provides that the failure to state the name of the true owner, lessee, general assignee or person in possession, shall not impair the validity of the lien. The appellant insists that, notwithstanding this last provision, the lien under the statute is only enforcible against the interest of the person named; and that while the failure to name the true owner would not affect the validity of the lien as against the interest of the person named in the notice of lien, it cannot have the effect of binding the interest of a person against whom no claim is made; and that this construction of the statute has received the approval of this court in the third department in the case of *Grippin* v. *Weed*. (22 App. Div. 594). It is difficult to see what object there could have been in requiring the insertion of the name of the person against whose interest a lien is claimed, if it was intended by the subsequent provision of the statute to provide that the failure to name such person would have no effect upon the validity of the lien against such person's interest. Full effect can be given to both these provisions of the statute by the construction placed upon the lien in the case of *Grippin* v. *Weed* (*supra*), that the intent was to hold the interest of the person named in the notice of lien, although the interest of such person in the property was not correctly recited or the name of the real owner was not inserted in the notice. The statute is imperative that the notice of lien shall contain the name of the person against whose interest a lien is claimed, and there is no provision in the statute giving a lien against the interest of one not so named. The 1st section of the act gives a lien only when the notice prescribed in the 4th section of the act is filed; and while a failure to state the true owner would

not affect the validity of the lien as against the interest of the one named in the notice of lien as the one upon whose interest the lien was desired, we do not think it was the intention of the Legislature to give a lien upon the interest of all those who had any title to the property when, by the notice of lien, the person filing the notice limits the individuals against whom the lien is claimed. This view of the scope of the statute is confirmed by the further provisions of section 4, which provide that the county clerk of each county shall provide and keep a book in his office, to be called the "Lien Docket," which shall be suitably ruled in columns headed "Claimants," "Against whom claimed," "Owners and parties in interest," "Premises," "Amount claimed," in which he shall "enter the particulars of such notice of lien, * * * the names of the owners and persons in interest, and other persons *against* whom the claims are made shall be entered in said book in alphabetical order," thus indicating that the notice of lien is to be given by the alphabetical list of names and not by the description of the premises contained in the docket. We certainly should not extend this statute by holding that such a lien is imposed when, by the notice creating the lien, none is asked for except as against those specifically mentioned, especially when the individual specifically mentioned is the only one who has had any contractual relation with the person seeking to obtain the lien and is the only one liable for the labor performed or materials furnished. In the case of *Spruck* v. *McRoberts* (45 N. Y. St. Repr. 625) the General Term in the second department held that a lien is valid as against a person not named in the notice of lien as either owner or person against whom the lien is claimed. That case was reversed by the Court of Appeals (139 N. Y. 193), but this point was not discussed by that court and we are not inclined to follow the decision of the General Term. The plaintiff's assignor, in his notice of lien, describes expressly the person against whose interest a lien is claimed. He describes that person as the owner of the property and the person who employed him to furnish the labor and materials. Undoubtedly, his failure to name the true owner, namely, this appellant, would not impair the validity of the lien as against the corporation; but the question is whether, upon filing this notice, he

obtained a lien against the interest of any one except those named in the notice of lien. We think that he did not, as the provision of the statute requiring that he should state the name of the person against whose interest a lien is claimed is imperative, and it is only those persons whose names are stated in the notice of lien whose interests are affected by the lien.

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.