WILLIAM A. HANKINSON, Respondent, *v.* AMY E. VANTINE, Appellant, Impleaded with WILLIAM H. RIKER et al., Respondents, et al.

1. MECHANIC'S LIEN — ALTERATION OF BUILDING BY OCCUPANT — CONSENT OF OWNER. The requirements of the Mechanic's Lien Law, as to the consent of the owner of a building to the performance of labor or furnishing materials by a lienor in altering the building on the employment of the occupant, are not met by a mere general agreement, which is unknown to the lienor, that the occupant may make alterations at his own expense; but the statute requires either that the owner shall expressly consent to the particular alteration made, or that, with a knowledge of the particular object for which they are employed, he acquiesces in the means adopted for that purpose.

2. ALTERATION OF LEASED BUILDING BY LESSEE — CONSENT OF OWNER ESSENTIAL TO LIEN OF MATERIALMAN. Where a lease of a building provides that the lessee shall not make any alterations without the consent of

the owner, under penalty of forfeiture, a mere general consent of the owner that the lessee in occupation may make alterations at his own expense does not constitute a consent by the owner that a third party shall furnish labor or materials for the alterations, so as to make such labor and materials the basis of a mechanic's lien upon the building, especially in the absence of any notice or knowledge on the part of the owner from which such consent can be implied.

3. LIEN BY ESTOPPEL — INSUFFICIENCY OF FACTS. A lien for labor and materials furnished in altering a building for a lessee in occupation without any sufficient consent on the part of the owner to support a lien under the statute, cannot be sustained in equity upon the ground that a consent to make alterations at the lessee's own expense, given by the owner to the lessee, provided that the owner should have the benefit of alterations at the expiration of the lease, where the original lease contained the same provision, and the lienor knew that his employer was not the owner of the building, and is not shown to have been influenced by, or to have known of, the consent given by the owner to the lessee, and it does not appear that the alterations were made with the knowledge of the owner or that they will be an actual benefit to the owner.

4. PAROL VARIATION OF WRITTEN AGREEMENT. The general rule which excludes evidence of parol negotiations and undertakings, when offered to contradict or substantially vary the legal import of a written agreement, applies only in controversies between the parties to the instrument.

*Hankinson* v. *Riker*, 10 Misc. Rep. 185, reversed.

(Argued January 26, 1897; decided March 2, 1897.)

APPEAL from a judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered December 1, 1894, which affirmed a judgment of the Special Term in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John L. Hill* for appellant. The spirit, as well as the letter, of the Mechanic's Lien Law is that the owner must, in some form, consent to alterations or repairs upon property before any person, be he laborer, contractor, materialman or what not, can acquire any right respecting it. (*Nellis* v. *Bellinger*, 6 Hun, 560; *Husted* v. *Mathes*, 77 N. Y. 388; *Burkitt* v. *Harper*, 79 N. Y. 273; *Otis* v. *Dodd*, 90 N. Y. 336;

*Schmalz* v. *Mead*, 125 N. Y. 190 ; *Miller* v. *Mead*, 127 N. Y. 544 ; *Spruck* v. *McRoberts*, 139 N. Y. 193.) The most that can be said of the paper signed by Miss Vantine is that she knew that Riker contemplated making alterations without specification of details or substance. But that is not enough to charge the landlord. (*Havens* v. *W. S., E. L. & P. Co.*, 49 N. Y. S. R. 771 ; *Regan* v. *Borst*, 11 Misc. Rep. 96.) The proof of Riker's statement, in the negotiations which led to these writings, of the changes which he proposed to make, was entitled to probative force as explaining the object and limitations of the consent. (*Chester* v. *Bank of Kingston*, 16 N. Y. 343 ; *Agawam Bank* v. *Strever*, 18 N. Y. 509 ; Whart. on Evi. § 940 ; *Field* v. *Munson*, 47 N. Y. 221 ; *Blossom* v. *Griffin*, 13 N. Y. 569 ; *Messmore* v. *N. Y. S. & L. Co.*, 40 N. Y. 422 ; *Truscott* v. *King*, 2 Seld. 161 ; *Clarke* v. *Meigs*, 10 Bosw. 327 ; *G. S. Co.* v. *Whitin*, 69 N. Y. 328.) The Riker Company and Comyns' estate were each bound to pay for these improvements by their covenant with Miss Vantine. (*Dusenbury* v. *Fisher*, 15 J. & S. 482 ; *Derham* v. *Lee*, 15 J. & S. 174 ; 87 N. Y. 599.) The referee was bound to provide for a separate sale of the leasehold in the first instance, and the exhaustion of all personal remedies against individuals liable to plaintiff before resorting to her reversion. That reversion, at the very utmost, stood in the relation of a surety or guaranty fund. It was separate from the leasehold which had been alienated. The same rule ought to have been applied as in sales in inverse order of alienation. (Bispham's Principles of Equity, § 360.)

*George W. Wickersham* for William A. Hankinson, respondent. The estate of Miss Vantine, in the premises 355 Sixth avenue, is subject to a lien for the work done and materials furnished in making alterations and repairs thereon for her lessee, W. H. Riker, which she had consented he should have done. (L. 1885, ch. 342 ; L. 1888, ch. 316, § 25 ; *Pell* v. *Baur*, 133 N. Y. 382 ; *Schmalz* v. *Mead*, 125 N. Y. 188 ; *Hackett* v. *Badeau*, 63 N. Y. 476 ; *Husted* v. *Mathes*, 77 N.

Y. 388; *Nellis* v. *Bellinger*, 6 Hun, 560; *Otis* v. *Dodd*, 90 N. Y. 336; *Miller* v. *Mead*, 127 N. Y. 544; *Havens* v. *W. S., E. L. & P. Co.*, 20 N. Y. Supp. 764; 143 N. Y. 632; *Cowen* v. *Paddock*, 17 N. Y. Supp. 387; 137 N. Y. 188; *Ross* v. *Simon*, 16 Daly, 160.) The defendant, Amy E. Vantine, expressly consented to the performance of the work upon the building 355 Sixth avenue, owned by her, for the value of which the lien of the plaintiff upon her interest therein has been established. (*Havens* v. *W. S., E. L. & P. Co.*, 20 N. Y. Supp. 764; *Cowen* v. *Paddock*, 137 N. Y. 188; *Nellis* v. *Bellinger*, 6 Hun, 560; *Husted* v. *Mathes*, 77 N. Y. 388; *Burkitt* v. *Harper*, 79 N. Y. 273.) The work having been performed upon and the materials furnished to both buildings alike as one job, and in turning them into one building, the notice of lien was properly filed against both properties jointly; but the referee correctly ascertained the price and value of the labor and material performed upon and furnished to each of the said respective houses, and reported that the plaintiff was entitled to a lien upon each building for the amount so found to have gone into it. (L. 1885, ch. 342; L. 1887, ch. 420, § 20; 15 Am. & Eng. Ency. of Law, 73, 74, 86; Kneeland on Mechanics' Liens, 116; 2 Jones on Liens, § 1319; *Paine* v. *Downey*, 4 E. D. Smith, 734; *Rogers* v. *McKenzie*, 4 Ves. 472; *Rourke's Case*, 5 Coke, 100; Story's Eq. Juris. 484; *McCauley* v. *Mildrum*, 1 Daly, 346; *Hall* v. *Sheehan*, 69 N. Y. 618; *Philips* v. *Gilbert*, 101 U. S. 721; *Mandeville* v. *Reed*, 13 Abb. Pr. 173; *Livingston* v. *Miller*, 16 Abb. Pr. 371; *Hayden* v. *Logan*, 9 Mo. App. 492; *Moore* v. *Thompson*, 105 Mass. 305.) Taking promissory notes from W. H. Riker for the balance due the plaintiff, which fell due after the expiration of the time within which the lien was required to be filed, but before the time to bring suit to enforce it expired, did not affect the right to file such lien, but merely postponed the time of enforcing it until after the maturity of the notes. (*G. Ins. Co.* v. *O. I. Co.*, 76 Hun, 194; *Carroll* v. *Sweet*, 128 N. Y. 21; *Jagger I. Co.* v. *Walker*, 76 N. Y. 522; *K. M. Co.* v.

*Eisenberg*, 7 Misc. Rep. 80; *Lutz* v. *Ely*, 3 E. D. Smith, 621; *Althouse* v. *Warren*, 2 E. D. Smith, 657; Phillips on Mechanics' Liens, §§ 282, 311; *Miller* v. *Moore*, 1 E. D. Smith, 739; *Mott* v. *Lansing*, 57 N. Y. 112; *Crossman* v. *U. R. Co.*, 127 N. Y. 34; *Jones* v. *Moores*, 67 Hun, 109.) There are no material errors in the rulings of the referee. (*Dixon* v. *La Farge*, 1 E. D. Smith, 722; *Gay* v. *Brown*, 1 E. D. Smith, 725; *Muldoon* v. *Pitt*, 54 N. Y. 269; *Knapp* v. *Brown*, 45 N. Y. 207; *McMaster* v. *Ins. Co. of N. A.*, 55 N. Y. 234; *Juilliard* v. *Chaffee*, 92 N. Y. 539; *Coleman* v. *F. Nat. Bank*, 53 N. Y. 388; *G. S. Co.* v. *Whitin*, 69 N. Y. 328; *Eagleson* v. *Clark*, 2 E. D. Smith, 644; *Callanan* v. *Gilman*, 107 N. Y. 360; *Morris* v. *Wells*, 7 N. Y. Supp. 61; 27 Abb. [N. C.] 202, notes.)

*James McKeen* for Wm. B. Riker & Son, respondent. The purchasers of the leasehold took the property as they found it. They had no knowledge or notice that Riker had come under any obligations to the mechanics or to Miss Vantine which he had not means to discharge. As such purchasers of a lease having more than three years to run, they were precisely within the protection of the Recording Acts. (1 R. S. 756, § 1; 762, §§ 36, 37, 38; L. 1885, ch. 342, § 5; *McCorkle* v. *Herrman*, 117 N. Y. 303.) It is urged that the purchasers' title, acquired February 12, 1892, to the leaseholds, was defective by reason of Miss Vantine not consenting to the assignment by Riker to them. This is untenable. (*Brummell* v. *McPherson*, 14 Ves. 173; *Murray* v. *Harway*, 56 N. Y. 337; *Smith* v. *Rector, etc.*, 107 N. Y. 610.) The plain and obvious meaning of the corporation's agreement with Miss Vantine is that it will observe and perform the other terms and conditions as well as the payment of rent for the entire remainder of the term. (*Townsend* v. *Scholey*, 42 N. Y. 18; Gerard on Titles, 182, 183.)

MARTIN, J. This action was to foreclose a mechanic's lien filed by the plaintiff against two lots, known as numbers 353

and 355 Sixth avenue in the city of New York, for the sum of $3,991.49, being the balance due him for labor and material furnished to one Riker, in altering the buildings thereon. These alterations consisted in taking out the party wall on the first and basement floors between two stores, one owned by the appellant, and the other by William B. Riker, and fitting them up as a drug store. The work was alleged to have been done, and the materials furnished, at the special request of the defendant William H. Riker, with the knowledge and consent of the appellant, the owner of number 355, and William B. Riker, the owner of number 353.

The premises of the appellant were owned by her father on the tenth day of November, 1888, and on that day he leased them to William Comyns for the term of ten years from May 1, 1889, at the annual rent of ten thousand dollars, payable monthly in advance. The lease was recorded in November, 1888. The lessee covenanted that he would not assign the lease, under-let the whole, or any part of the premises, or make any alterations therein, without the consent of the lessor, under penalty of forfeiture and damages. The lease also prohibited the use of the premises for the sale of any kind of intoxicating beverages, and provided that the lessee would keep the buildings and sidewalks in good order and condition, including the roof, making all repairs and alterations at his own cost. It further provided that any alterations or improvements made thereon, should, at the termination of the lease, revert to and become the property of the lessor without payment therefor.

The original lessor died January 25th, 1890, leaving a last will and testament, by which the premises known as number 355 were devised to the appellant. On the eighteenth of May, 1891, Comyns assigned his lease to William H. Riker, and the appellant consented to such assignment; she also agreed that the clause in the original lease, relating to the sale of intoxicating beverages, should not apply to the drug business ; that Riker might sub-let the upper part of the premises, and should have the right to make alterations and improve-

ments on the building, which should become a part of the premises, and remain thereon at the expiration of the lease as the property of the owner.

On the trial, the referee, in effect, found that all the work and materials furnished by the plaintiff were furnished with the consent of the appellant, and that she consented to the alterations made by Riker. He then held that the plaintiff had a valid lien upon the appellant's premises for the sum of $2,418.44, with interest from January 1, 1892, directed a judgment to that effect, and that the premises of the appellant be sold to satisfy such lien.

The referee refused to find that the appellant had no contract or dealings with the plaintiff in connection with doing any of the work or furnishing any of the materials upon the premises owned by her, although the undisputed evidence was to that effect. He also refused to find that, shortly previous to the execution of the written consent relied upon by the plaintiff, the appellant had an interview with Riker, when he asked her consent to the assignment of the lease, and that Riker then stated to her that he desired to make an archway between the two stores on the ground floor, to raise the ceiling in her store, and agreed that if she would consent, and the store should pass into other hands at the end of the term, he would restore the building to its present condition. He was also requested to find that that was the only proposition made to her for connecting or altering her store, and that she had no notice or knowledge of any intention upon the part of Riker to make any other repairs or alterations upon the building, which was denied. To these findings, refusals to find as requested, and to the referee's decision that her premises were subject to such lien, the appellant duly excepted. She also excepted to his direction of a judgment to that effect.

On the trial the plaintiff called the appellant as a witness, and proved by her that the only changes that were proposed to be made when she signed the paper, giving consent that Riker might make alterations, were the cutting of an arch through the party wall on the first floor and the raising of the

ceiling, and that she never saw the building or alterations while the work was in progress. The only evidence that was not in corroboration of this testimony was that of one Roome, who at best had a mere impression, and an examination of whose testimony discloses that he had no sufficient recollection of what took place between the appellant and William H. Riker to render his testimony of any value. Indeed, his testimony was to the effect that he had no clear recollection about anything that took place at that time.

The learned referee found that the extent of the appellant's information as to the alterations made was not conclusively shown by the evidence, but that he did not regard her knowledge on that subject as material for the reason that she might have ascertained what alterations were to be made. This finding was also excepted to.

We think the evidence of the appellant to the effect that she never knew or heard of any of the alterations made, except the raising of the ceiling, must be regarded as sufficient to establish that fact. The plaintiff cannot claim that the referee had a right to disregard her evidence upon the ground that she was an interested party because he called her as a witness and proved these facts by her, thereby assuring her credibility as a witness upon that subject. While he might have shown the facts to be different, he could not impeach or deny her credibility. Under these circumstances, we think those facts must be regarded as established, that the learned referee erred in refusing to find them upon the appellant's request, and in finding that the appellant consented to the alterations made. Nor do we think he was justified in holding that it was immaterial what information she possessed in regard to the alterations made, because she could have ascertained what was being done or what Riker proposed to do. These errors require a reversal of the judgment, unless it can be held that they were immaterial and could not have affected the result.

Thus, we are brought to the consideration of the question whether, if the appellant had no knowledge that Riker intended

to make any alterations, except those mentioned, or that he was making others, her property can be made subject to a lien for all the alterations made, upon the sole ground that she gave the written consent referred to, without including in it a limitation to the effect that he could only cut the arch and raise the ceiling.

At this point, it is proper to consider the circumstances under which this consent was given, and the object sought to be accomplished. The original lease which was assigned to Riker contained a covenant on the part of the lessee that he would not make any alterations without the consent of the lessor, under penalty of forfeiture and damages. Obviously, the purpose of the written consent was to avoid the effect of that covenant, and thus prevent a forfeiture. Such being the purpose, the relation of the parties after the consent was the same as though no such covenant had existed in the original lease, and their rights the same as they would have been under the original lease if it had contained no covenant against making alterations. All that can be said to have been effected by that consent is that it permitted Riker to make alterations without incurring the forfeiture provided for in the original lease. It is obvious that such was its sole purpose.

Assuming, then, that Riker possessed the right, under the lease and the appellant's consent, to make alterations in her building without forfeiture, does it follow that thereupon her property became liable for the payment of any amount that might be expended in such alterations without her knowledge and without her giving any other consent? I think not. It cannot be seriously contended that the appellant's written consent had any reference whatever to a mechanic's lien, or to any labor or materials furnished by the plaintiff.

The statute under which the plaintiff seeks to establish a lien upon the appellant's property in effect provides that any person who shall hereafter perform any labor or furnish any materials which have been used in altering or repairing any house or building, with the consent of the owner, may, upon filing the notice of lien prescribed, have a lien for the princi-

pal and interest of the price and value of such labor or materials upon the building or premises upon which the same may stand. The consent referred to in this statute .evidently is a consent of the owner to the performance of labor, or the furnishing of materials for the purpose named. The simple fact that the appellant gave Riker the abstract right to make alterations in her store at his own expense, of which consent the plaintiff had no knowledge, by no means amounted to a consent by her that the plaintiff should furnish labor or materials to be employed in making alterations upon her property, especially in the absence of any notice or knowledge on her part from which such consent could be implied.

In *Spruck* v. *McRoberts* (139 N. Y. 193, 199), Judge O'BRIEN, who delivered the opinion of the court in that case, said : " When a contractor, mechanic or materialman proposes to erect a building, or to expend labor or material upon land under a contract with a person in possession, it is incumbent upon him to inquire and to assure himself of the fact that the person with whom he contemplates making the contract, or for whose benefit he is about to employ labor or materials, has, in fact, such an estate or interest in the land as will enable him to assert a statutory lien. If he fails to do this, or is mistaken in his calculations and contracts with a person without title, the statute does not impress a lien upon the estate of the true owner unless he is in some way connected with the contract or has given his consent to the expenditure in such manner as to bind him within recognized principles of equity."

In *Cowen* v. *Paddock* (137 N. Y. 188) it was held that the facts from which the inference of consent may be drawn must be such as to indicate a willingness on the part of the owner to have the improvements made, or an acquiescence in the means adopted for that purpose, with knowledge of the object for which they were employed.

Thus it seems that the requirements of this statute as · to consent are not met by a mere general agreement to the effect that a third person may, at his own expense, make alterations in a building occupied by him. The statute requires more.

It requires either that the owner shall expressly consent to the particular alteration made, or that, with a knowledge of the particular object for which they are employed, he acquiesces in the means adopted for that purpose.

In this case we find no evidence whatever to indicate the appellant's willingness to have these particular improvements made by Riker, or of any acquiescence upon her part in the means adopted for that purpose, unless to the extent of raising the ceiling in her store. We are, therefore, of the opinion that it cannot be properly held that there was any knowledge or conduct upon the part of the appellant from which it could be implied that she consented to the performance of the labor or the furnishing of materials for which the plaintiff sought to establish his lien. The learned referee held that knowledge upon her part was immaterial, as she might have, in some way, ascertained the fact ; how we are not informed. Moreover, we are aware of no principle upon which it can be properly held that the appellant had any such opportunity to acquire knowledge of the intended alterations as to make it the equivalent of actual knowledge, so that consent on her part might be implied. That she had no such knowledge is proved and not denied. Under these circumstances, the only ground, if any, upon which the plaintiff was entitled to establish a lien upon the appellant's property, was by virtue of the written consent which was actually given. The effect of that consent has already been considered, and can at most be regarded as extending to such labor and materials are were employed in raising the ceiling in her building.

But it is said, and was held by the learned General Term, that oral testimony as to the conversations which preceded the execution of the appellant's written consent was incompetent. In the first place the plaintiff is not in a position to insist upon that claim, inasmuch as the evidence was introduced by him. In the next place the general rule which excludes evidence of parol negotiations and undertakings, when offered to contradict or substantially vary the legal import of a written agreement, applies only in controversies between the parties

to the instrument. (*Juilliard* v. *Chaffee*, 92 N. Y. 529, 534; *New Berlin* v. *Norwich*, 10 Johns. 229; *McMaster* v. *Ins. Co. of N. A.*, 55 N. Y. 234; *Coleman* v. *First Nat. Bank*, 53 N. Y. 388.) It is obvious that the doctrine announced by the learned General Term cannot be sustained. Indeed, the respondent's counsel contends that this evidence was admissible, and cites the foregoing cases as sustaining that doctrine. Moreover, if the contrary doctrine were upheld, it would then follow that the appellant gave no consent whatever which would render her property liable to a lien for any of the improvements made by Riker, as we have already determined that her written consent, of which the plaintiff had no knowledge, was insufficient to justify the court in holding her property liable to a lien for the labor and materials furnished by the plaintiff.

Nor do we think the conclusion of the court below, that the plaintiff's lien can be sustained in equity upon the ground that the appellant was, at the expiration of the tenant's term, to have the benefit of all the alterations made, if she should so elect, can be upheld. The answer to that position is that before any consent of the appellant was obtained she was entitled, under the original lease, to all the benefit of any alterations which should be made upon the premises. So that she acquired nothing by reason of the subsequent provision to the same effect.

Again, when we consider the facts in this case, any benefit she might derive from the alterations made is far from apparent. At least sixty-five feet of her party wall, both in the basement and on the first floor, have been removed, and the front taken out and changed, so that before she can enjoy her property separately she will be required to construct sixty-five feet of party wall, two stories in height, and change the entire front of her building, unless the assignee of Riker shall make such changes for her.

The plaintiff knew that Riker was not the owner of the premises. He was, therefore, put upon inquiry to ascertain Riker's rights as lessee. (*Spruck* v. *McRoberts*, *supra*.) Besides, there is no evidence that he was ever influenced by

her consent, or that he knew of its existence. As we have already seen, the referee found that the appellant was in a position, before signing such consent, to ascertain the full particulars in regard to the improvements and alterations Riker proposed to make. There is no evidence to show that she was able to ascertain those facts, except so far as his statement in regard to the arch and raising the ceiling was concerned, as those were the only alterations that he mentioned to her. That she knew he intended to make others was not proved. The proof also shows that she could not have ascertained the fact from the acts of the plaintiff or Riker while making the alterations, as she was not in the city at that time.

On the trial, the appellant, upon the cross-examination of the plaintiff, asked him if Riker told him whether the appellant had given him permission to alter the store. This was objected to by the plaintiff and the evidence was excluded. Under such circumstances, it is manifest that the doctrine of estoppel has no application in this case.

Without further discussion of the various questions involved, we are of the opinion that the learned referee erred in finding that the appellant gave any such consent for the alteration of her building as is contemplated by the statute, or that there was any consent, express or implied, which would make her property liable to a lien therefor, unless to the extent of raising the ceiling in her store. While she consented that an arch between the two stores might be constructed, inasmuch as none was made, she cannot be held liable for its supposed cost.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except O'BRIEN, not voting.

Judgment reversed.