BARR v. SOFRANSKI et al.

(Supreme Court, Appellate Division, First Department.   March 5, 1909.)

1. FRAUD (§ 50*)—NECESSITY FOR PROOF.
   Fraud must be proved, and cannot be presumed merely from suspicious circumstances, and, when a judgment is based on a finding of fraud, there must be evidence of fraud justifying the finding.
   [Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. § 50.*]

2. WITNESSES (§ 321*)—CREDIBILITY—IMPEACHMENT.
   Facts testified to by a witness must be deemed established against the party calling him.
   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1094; Dec. Dig. § 321.*]

3. BANKRUPTCY (§ 303*)—ACTION BY TRUSTEE—EVIDENCE—SUFFICIENCY.
   Evidence *held* insufficient to show that a mortgage by a bankrupt was transferred to hinder, delay, or defraud the mortgagee's creditors.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

4. BANKRUPTCY (§ 303*)—ACTION BY TRUSTEE—EVIDENCE—ADMISSIBILITY.
   In an action by a trustee in bankruptcy to set aside an assignment of a mortgage by the bankrupt to his wife and by her to her brother as having been made to defraud creditors, it was error to admit in evidence letters written by the bankrupt's attorney offering to compromise with the creditors, and his testimony as to what he thought of the bankrupt's property, whether he considered a certain offer of compromise fair, etc., and plaintiff could not show the pleadings, etc., in a judgment creditor's action against the bankrupt's wife, brought over a year after the assignment, nor the original schedules in bankruptcy signed and sworn to by the bankrupt more than a year after the assignment.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

   Houghton, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by William J. Barr, Newman Sofranski's trustee in bankruptcy, against Eva Sofranski and another. From a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Edward W. S. Johnson, for appellant Eva Sofranski.
Edward Kaufmann, for appellant Max Solomon.
A. Delos Kneeland, for respondent.

INGRAHAM, J. This is an appeal from a judgment adjudging that the assignment of a bond and mortgage by Newman Sofranski, the bankrupt, to Eva Sofranski, his wife, and an assignment by Eva Sofranski to the defendant Solomon, is void and fraudulent as against the bankrupt's creditors. The court found that in August, 1905, Newman Sofranski owned certain real property in the city of New York described in the complaint; that he sold this property, and on the 15th day of August, 1905, he received from the purchaser $20,000 in cash and a bond and mortgage for $26,500, payable to the bankrupt, and which mortgage was duly recorded; that the defendant Eva Sofranski was entitled to an inchoate right of dower in the premises, and joined with her husband in the deed conveying the property, and subsequently, on the 22d day of January, 1906, the bankrupt assigned the bond and mortgage to his wife, Eva Sofranski, without any or adequate consideration, which assignment was recorded in the office of the register of the city and county of New York; that thousands of dollars were owing to certain creditors of Newman Sofranski on the 22d day of January, 1906, of which the defendant Eva Sofranski had knowledge, and that the assignment of the mortgage left Newman Sofranski insolvent; that there was no agreement in writing or otherwise between the said Newman Sofranski and Eva Sofranski entered into at or prior to the sale of the property whereby Newman Sofranski agreed to give Eva Sofranski the said bond and mortgage in consideration of her executing the deed conveying the said premises, and the said Eva Sofranski executed the deed of her own free will, without any promise of any consideration whatsoever, and that a certain letter purporting to have been dated the 11th day of August introduced in evidence by the defendant on the trial of the action was and is an afterthought and a fabrication; that on the 16th day of February, 1907, the said Eva Sofranski attempted to assign the said mortgage to the defendant Solomon for the purpose of hindering, delaying, and defrauding the creditors of the said Newman Sofranski, and the said defendant Solomon took such assignment with knowledge of the fraud, and with a like intent and purpose to defraud the creditors of the said Newman Sofranski.

To prove the allegations of the complaint upon which the action was based, the plaintiff called as witnesses the parties to this transaction. Newman Sofranski, the bankrupt, testified on his direct examination that on the 22d day of January, 1906, he was entirely solvent; that there was $11,700 due him from his brother as money loaned and $6,000 in an unliquidated claim against Steinthal & Co.; that he be-

came embarrassed on March 3, 1906, when a petition in bankruptcy was filed against his brother; that he spoke to his brother, who said that he could still go on and continue and could pay the witness back some of the money that he owed; that subsequently, when his brother was adjudicated a bankrupt and there was no chance of getting any of the money that his brother owed him, he found that he could not continue his business. He further testified that in August, 1905, he owned this property in question subject to a mortgage of $82,000; that he sold the property for $122,500 and received $20,000 cash and a mortgage for $26,500, paying off a lien of $3,250 out of the money that he received; that the mortgage for $26,500 was given to the defendant in August; that, when he received this offer of $122,500 for the property, his wife strongly objected to selling it, saying that before she would consent to a sale of the property, or to sign her name, she wanted to be protected in some way, to which the witness said, "The only protection I can give is that I get $20,000 in cash. and I will pay you back the second mortgage which I take," and with that she said she was satisfied; that this was the first transaction that the witness had ever had in real estate, and did not know that he had to have an assignment to transfer the mortgage, but at the same time he gave her a paper which entitled her to the mortgage, and which was subsequently introduced in evidence; that the defendant said she would not sign the deed unless the witness gave her the mortgage. He testified on cross-examination that on the 11th day of August, 1905, he had no indebtedness of any kind whatever, and that on the 22d of January, 1906, the only indebtedness he had that had not been paid was the indebtedness that was on his schedules in bankruptcy. On redirect examination by the plaintiff, the witness testified that the deed of the property was executed in the country, and that at the time the defendant refused to execute the deed, unless the plaintiff would give her a paper that the mortgage belonged to her, and at that time the witness gave her the paper which was produced. This paper was as follows:

"New York, August 11, 1905.

"I, Newman Sofranski, agree with my wife Eva Sofranski that if she signs the deed on property 64 and 66 Rutger street, New York, I will give her the 2nd Mtg. of $26,500 which I take back.        [Signed]     Newman Sofranski."

The defendant took this paper at the time and retained it.

The plaintiff then called the defendant Eva Sofranski, who testified on her direct examination that her husband had been receiving offers for the purchase of this property for some time before it was sold; that she was not anxious to sell the property; that in May, 1905, when an offer for the property was made, she stated that she was not going to consent to the sale of the house; then, when the final offer that was accepted was made, her husband said that was the best offer he could ever get for the property; that she went to the country early in July, and her husband came there and talked over the selling of the property; that he then said that he was to get $20,000 in cash, and was to have a mortgage for $26,500; that finally she made a proposition to her husband that she would sign it if he would give her the $26,500 mortgage, and to that her husband agreed; that before she

signed this deed her husband gave her the paper, dated August 11, 1905; that she had no recollection of giving it back to him and his taking it back to New York; that she had the paper at that time in her possession; that she signed the deed in the country, and that she always thought that this mortgage was her property; that in January, 1906, there was a proposition made to her to sell this mortgage, and it was then a lawyer was consulted, and she was told to sell it; that she had to have an assignment of it, and in consequence of that advice the assignment of January 22, 1906, was prepared and executed; that subsequently, in February, 1907, she sold the mortgage to her brother for $16,000; that there was at that time due on the mortgage $20,000, as she had received from the mortgagor three payments on account before she sold the mortgage to her brother; that her brother kept $10,000 of that money on deposit until it was determined that she could assign it; that she never knew that she did not have a good title to the mortgage until her attorney told her that the paper was not enough for her to make a contract to sell the mortgage on. Max Solomon, assignee of the mortgage, was also called as a witness by the plaintiff. He testified that he first learned that Newman Sofranski was in financial difficulties after the first petition in bankruptcy was filed against him; that he first knew about this mortgage when he purchased it from his codefendant in 1907. There was then introduced in evidence the check from this witness to Eva Sofranski for $16,000, dated February 16, 1907, and a check dated February 19, 1907, from Eva Sofranski to the witness for $10,000 which he testified that he had taken to hold for her.

The plaintiff then called the lawyer who prepared this assignment of January 22, 1906. He testified that in the months of January, February, and March, 1906, he was the attorney for Newman Sofranski, the bankrupt; that he first met the defendant Eva Sofranski about that time that he drew the assignment of this mortgage; that he saw her once before he drew the assignment; that he had discussed the assignment of the mortgage with Newman Sofranski before, and that he had said that his wife wanted to sell the mortgage, and he brought to the witness the bond and mortgage and this paper of August 11th; that he told him that the defendant could not sell the mortgage without a formal assignment; that a day or two after he went to see the defendant, explained to her what was required, and that he prepared the assignment which was executed by Sofranski; that in the fall before Sofranski had told the witness that he had sold the house and given this mortgage to his wife, and that, in consequence of his advice, Sofranski signed the assignment of the mortgage, and the witness had it recorded. These facts are all proved by witnesses called by plaintiff.

On behalf of the defendant, Samuel Tischman, the mortgagor, was called, and testified that the mortgage was an installment mortgage by which he was to pay $2,100 and interest every six months; that in September, 1905, he was informed by Newman Sofranski that his wife held the mortgage and directed to make the payments of interest and installments to her; and that, in pursuance of that instruction, he had always paid the interest and installments as they became due to her;

that Sofranski said, "Mr. Tischman, this mortgage has been assigned to Mrs. Sofranski and you will have to make payments to Mrs. Sofranski," and there was no testimony to contradict that evidence. Here were facts proved by witnesses called by plaintiff which tended to show that the mortgage was actually transferred to the defendant as a condition for her joining with the bankrupt in a conveyance of the property which released her right of dower; that at that time the bankrupt had no indebtedness, had received $20,000 in cash from the sale of the property, and was entirely solvent. The effect to be given to adverse witnesses called by a plaintiff to establish his cause of action is stated in Hankinson v. Vantine, 152 N. Y. 20, 46 N. E. 292. It is there said:

"We think the evidence of the appellant to the effect that she never knew or heard of any alteration made except the raising of the ceiling must be regarded as sufficient to establish that fact. The plaintiff cannot claim that the referee had a right to disregard her evidence upon the ground that she was an interested party because he called her as a witness and proved these facts by her, thereby assuring her credibility as a witness upon that subject. While he might have shown the facts to be different, he could not impeach or deny her credibility. Under these circumstances, we think these facts must be regarded as established, that the learned referee erred in refusing to find them upon the appellant's request, and in finding that the appellant consented to the alterations made."

The plaintiff having proved these facts by witnesses whom he called for that purpose, he then introduced in evidence depositions made by the bankrupt and his wife and by Solomon to whom the mortgage had been assigned, which in some minor details were inconsistent with the testimony that had been given by the witnesses called by the plaintiff, but which insisted that the mortgage was transferred in pursuance of this agreement made at the time of the sale of the property, and, upon this testimony, the court found in opposition to all the evidence that the wife executed the deed voluntarily and without any such agreement; that the instrument of August 11th was an afterthought, and was not executed at the time it was dated, and that the transfer of the mortgage on the 22d day of January was made with intent to hinder, delay and defraud the bankrupt's creditors. I think these findings were all without evidence to support them, based entirely upon suspicion that the testimony of the witnesses produced by the plaintiff was not true, and therefore he was entitled without evidence to find to the contrary. It is a fundamental principle that fraud must be proved and not assumed, and, when a judgment is based upon a finding of fraud, to sustain the judgment, there must be evidence of fraud which justifies the finding. Now, from the evidence it is established that in August, when this property was sold, the defendant had the·right to insist upon any terms that she pleased as a condition for her joining with her husband in the execution of a deed of the property which released her right of dower. At that time there is no question but that the husband was solvent. He had received $20,000 for the property in cash and was then out of debt. He contemplated going into business, but, so far as appears, it was not a speculative business which he anticipated would result in disaster, and there was nothing to prevent his acceding to the demand of his wife in transferring to her this mort-

gage as a condition of her joining with him in conveyance of the property. However suspicious the circumstances may seem, bare suspicion without evidence to support it is never sufficient to sustain a finding of fraud. On the 22d day of January, 1906, when the formal assignment of the mortgage was executed, the defendant was not then insolvent if his brother could respond to the indebtedness which the witnesses called for the plaintiff testified actually existed. It subsequently appeared that the brother was insolvent, but there is no evidence to show that at that time Sofranski had reason to suppose that his brother was insolvent, or would be unable to make the necessary payments to him to enable him to discharge his indebtedness so that he could go on with his business. If we are to follow the rule stated in Hankinson v. Vantine, supra, and the facts proved by the witnesses called by the plaintiff must be regarded as established, then the court certainly erred in finding to the contrary, without direct evidence to show that the facts were different from those testified to by the witnesses which he called. I think, therefore, the findings of fact by the learned trial court that this transfer of the mortgage was made for the purpose of hindering, delaying, and defrauding the bankrupt's creditors are without evidence to support them, and for that reason the judgment must be reversed.

There was much evidence accepted that was incompetent. Thus the court admitted in evidence letters written in March, 1906, from the attorney for the bankrupt who was not a party to the action calling a meeting of his creditors, and making an offer of 30 cents on the dollar. The bankrupt's attorney was called as a witness, and testified that in the month of January he was consulted by the bankrupt, and was then asked a series of questions as to what he thought of the bankrupt's property, whether he considered an offer of 30 cents on the dollar to the bankrupt's creditors was a fair offer, and how much he thought he could offer them. This evidence seems to have been all inadmissible. The plaintiff also offered in evidence the pleadings in a judgment creditor's action commenced against the defendant Eva Sofranski in 1897, an injunction order which restrained her from transferring this mortgage, and a bond given by the defendant Sofranski for $1,500 conditioned upon the defendant paying to the plaintiff in that action such damages as should be awarded. This seems to have been incompetent. It was over a year after the execution of the assignment and after defendant Sofranski had transferred the mortgage to the defendant Solomon. The plaintiff also offered in evidence the original schedules in bankruptcy signed and sworn to by the bankrupt, Newman Sofranski, on the 18th day of January, 1907. This was a year after the formal transfer was made of the mortgage, and was incompetent as against these defendants.

Without discussing the other questions presented in this case, from what has been said, it follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN and SCOTT, JJ., concur. HOUGHTON, J., dissents. LAUGHLIN, J., concurs in result.