HENRY SCHULDT, JR., and Others, Respondents, *v.* BENJAMIN CHUCKROW and Others, Appellants, Impleaded with FREDERICK A. STOLL and Another, Defendants.

Third Department, January 17, 1928.

**Liens — mechanics' liens — property was leased with privilege in tenant to make alterations and repairs — nearly all alterations were for benefit of tenant — permission in lease to make alterations and repairs did not constitute absolute statutory consent required by Lien Law, § 3, to make property subject to lien as to all repairs made — error to reject evidence on behalf of owners of conversations with tenant showing non-consent and evidence showing ignorance as to some repairs.**

The mechanics' liens which are involved in this action are based on materials and work furnished to the tenant of the building.   The lease authorized the tenant to make certain alterations and repairs at his own expense.   Nearly all of the alterations and repairs were for the benefit of the tenant.

The authorization in the lease to make changes and repairs did not constitute an absolute statutory consent by the owners to the making of the repairs, within the meaning of section 3 of the Lien Law, necessary to give the right to a lien against the property.

It was error for the court to reject evidence as to conversations between the owners and the tenant tending to show that they did not consent to some of the alterations and evidence tending to show that the owners were ignorant

as to other alterations that were made. The exclusion of such testimony may seriously have prejudiced the owners because it might not only have reduced the amount of the liens but also might have established their invalidity because of failure to file the same within the statutory period.

APPEAL by the defendants, Benjamin Chuckrow and others, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Rensselaer on the 6th day of June, 1927.

This an action to foreclose mechanics' liens, one in favor of the plaintiffs Henry Schuldt, Jr., and Fred Schuldt, copartners doing business as painters, and another in favor of the plaintiffs Anthony Miorin and Robert A. Miorin, copartners doing business as carpenters.

The appellants are the defendants Benjamin Chuckrow and his three brothers, owners of the property against which the liens were filed.

*Abraham C. Goldstein* [*John T. Norton* of counsel], for the appellants.

*Owen D. Connolly*, for the respondents.

COCHRANE, P. J. The property in question is situated on the east side of River street in the city of Troy. The first floor of the building had been used as a shoe store except that a room in the rear had been used for other purposes. One Stoll occupied the adjoining property on the north and used it as a restaurant. On March 3, 1925, the appellants leased to said Stoll a part of their building consisting of the said store and the room in the rear and two floors above said rear room and the cellar underneath said store and said rear room. The purpose of Stoll in leasing this property was to use the same in connection with his restaurant on the north. The lease was to run ten years from April 1, 1925. The rent was $2,400 a year for the first five years and $3,000 a year for the last five years, to commence April 1, 1925. The lease contained the following provisions: "It is further agreed that the said party of the second part shall not pay any rent to the said parties of the first part for the months of April, May, June, July and August of 1925, but the said sum so due for rent is to be allowed to the said party of the second part and to be applied and used by him upon the cost of the alterations and repairs to the premises hereby leased to be made by the said party of the second part and to the cost of the installation of a new front in said premises. The said party of the first part reserves the right to take the plate glass windows on the front of said premises hereby let when said repairs and alterations are made thereto by the said party of the second part and also

reserves the right to take all salvage due to the making of said repairs or alterations.

" The said party of the second part agrees to install a new front in the premises hereby leased and to make all necessary repairs and alterations thereto all at his own expense.

" It is hereby further understood and agreed that during the term of this lease the said party of the second part shall make all repairs to the premises herein leased during the term of this lease. * * *

" The said party of the second part agrees to keep said premises hereby leased and every part thereof in good repair during said term and leave the same in as good condition as at the commencement of said lease, reasonable wear and tear thereof and damages by the elements alone excepted. * * *

" It is further expressly agreed that at the expiration of this lease the said party of the second part shall at his own expense, close up all openings made by him between the building herein leased and the building adjoining on the north and shall replace the walls where said openings are made in proper condition.

" It is further expressly agreed that at the expiration of the term of this lease, that the fixtures installed by the said party of the second part in the premises hereby leased which have been attached to the realty, shall be and become the property of the said parties of the first part and shall remain and be considered a part of said realty. This includes all panel work, fancy woodwork, or other fixtures which may have been installed by the said party of the second part during the term of the lease in such a manner as to be attached to the realty."

Other provisions in the lease are not material to a discussion of this case.

The tenant immediately entered upon extensive alterations. He installed a new front in the building making it conform in style and appearance to the front of his property on the north. The new front contained no door so that access to the building from River street was impossible. Three openings were made through the twelve-inch wall of the premises into the Stoll restaurant on the north. The rear room on the first floor was converted into a kitchen. The space on the second floor was converted into three booths or independent rooms for private dining parties. Various other extensive alterations were made. The approximate cost of the carpenter and mason work alone was estimated by one of the plaintiffs at about $4,500. The items going to make up the liens of the plaintiffs were not given at the trial but a lump sum statement thereof. The entire bill of the Miorin firm as carpenters

for labor and materials was $2,664.48, of which Stoll paid $1,239.31. The entire bill of the Schuldt firm as painters for labor and materials was $727.90, no part of which was paid by Stoll. On February 4, 1926, he went into bankruptcy. Small dividends in the bankruptcy proceedings were paid on the liens. On the day that Stoll filed his petition in bankruptcy the Schuldt lien was filed and on the following day the Miorin lien was filed. Section 10 of the Lien Law (as amd. by Laws of 1916, chap. 507) provides: " The notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or within four months after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished." According to the evidence substantially all of the labor and materials had been furnished more than four months prior to the filing of the liens. Only · trifling and insignificant items were claimed to have arisen within the four months. A jury who heard the evidence and to whom was submitted the question as to whether all that was intended to be performed under the contract of the plaintiffs had been performed more than four months before the filing of the liens answered the question " yes." However, the court disregarded this finding and found to the contrary.

The respondents predicate their cause of action on section 3 of the Lien Law as follows: "A contractor, sub-contractor, laborer or material man, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or sub-contractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article." The real question in this case is whether under the foregoing statute the alterations in question were made with the *consent* of the appellants.

The court ruled that the lease conclusively established such statutory " consent " as to all of the alterations that were made and excluded testimony offered by the appellants as to their conversations with Stoll with a view to showing that they did not consent to some of the alterations and also excluded testimony intended to show that they did not know that some of the alterations were being made. This ruling presents the serious question on this appeal. Such evidence if admissible not only might have reduced the amount of the liens but might also have established that none of the authorized items " of work performed or materials

furnished " were so performed or furnished within four months prior to the filing of the liens and if such were the fact the liens had no validity whatever as against the appellants.    If the court was correct in its ruling the tenant had unlimited authority to make any changes and alterations at any time during the ten years constituting the life of the lease and to charge the appellants' property with a lien or liens therefor.    The appellants should not be held to such unlimited liability unless the language of the lease reasonably implies that such was the intent of the parties.

It is quite clear that substantially all of the alterations contemplated by the lease were exclusively for the benefit of Stoll.    Certainly it did not benefit the appellants to have a front put into their store which excluded them from access to the street, especially when as the evidence discloses the existing front was suitable and in good condition, nor to have openings cut through the side walls only to be closed after the expiration of the lease.    Nor is it clear how the conversion of the rear room on the first floor into a kitchen or the division of the room above into three small rooms could benefit the property when it ceased to be used for restaurant purposes.    A fair reading of the lease indicates that all or nearly all the alterations therein contemplated were for the benefit of the tenant, the appellants merely making a concession of $1,000, the rent of the first five months, for his benefit.    It was the same as if the rent had been fixed at $1,000 less than was the case.    All repairs and alterations were declared by the lease to be at the expense of the tenant.    It does not appear that plaintiffs had knowledge of the lease or its contents.

The case of *Hankinson* v. *Vantine* (152 N. Y. 20) was a mechanic's lien case arising under a lease.    One Riker was the assignee of the lessee.    The lease as modified by a subsequent agreement provided for alterations or improvements to the property.    The court said: " On the trial the plaintiff [lienor] called the appellant [owner] as a witness, and proved by her that the only changes that were proposed to be made when she signed the paper, giving consent that Riker might make alterations, were the cutting of an arch through the party wall on the first floor and the raising of the ceiling, and that she never saw the building or alterations while the work was in progress."    This was the same kind of evidence which the court in the present case excluded.    The court continued: " Thus, we are brought to the consideration of the question whether, if the appellant [owner] had no knowledge that Riker intended to make any alterations, except those mentioned, or that he was making others, her property can be made subject to a lien for all the alterations made, upon the sole ground that she gave the written consent

referred to, without including in it a limitation to the effect that he could only cut the arch and raise the ceiling. * * * Assuming, then, that Riker possessed the right, under the lease and the appellant's [owner's] consent, to make alterations in her building without forfeiture, does it follow that thereupon her property became liable for the payment of any amount that might be expended in such alterations without her knowledge and without her giving any other consent? I think not. It cannot be seriously contended that the appellant's written consent had any reference whatever to a mechanic's lien, or to any labor or materials furnished by the plaintiff. * * * The simple fact that the appellant gave Riker the abstract right to make alterations in her store at his own expense, of which consent the plaintiff had no knowledge, by no means amounted to a consent by her that the plaintiff should furnish labor or materials to be employed in making alterations upon her property, especially in the absence of any notice or knowledge on her part from which such consent could be implied. * * * Thus it seems that the requirements of this statute as to consent are not met by a mere general agreement to the effect that a third person may, at his own expense, make alterations in a building occupied by him. The statute requires more. It requires either that the owner shall expressly consent to the particular alteration made, or that, with a knowledge of the particular object for which they are employed, he acquiesces in the means adopted for that purpose."

In *Beck* v. *Catholic University of America* (172 N. Y. 387) the court in commenting on the *Hankinson* case said: " The *Hankinson* case is to the effect that a mere general consent of an owner that the lessee in occupation may, at his own expense, make alterations in a building occupied by him, does not constitute a consent by the owner that a third party shall furnish labor or materials for the alterations, so as to make such labor and materials the basis of a mechanic's lien upon the building, especially in the absence of any notice or knowledge on the part of the owner from which such consent can be implied." The doctrine above enunciated has been reiterated. (*De Klyn* v. *Gould,* 165 N. Y. 282; *Brigham* v. *Duany,* 241 id. 435, 439; *Havens* v. *West Side Electric Light & Power Company,* 49 N. Y. St. Repr. 771; affd., 60 id. 874; *Ætna Elevator Company* v. *Deeves,* 125 App. Div. 842.)

Under the authorities above cited the appellants should have been permitted to prove that they did not consent to the alterations in question. In view of the erroneous exclusion of evidence cases cited by the respondents are not helpful. In them the question here presented did not exist. Perhaps those authorities would be

applicable if the appellants had been permitted to develop their defense. That can only be determined on a consideration of the fully developed case on both sides. The exclusion of the testimony may seriously have prejudiced the appellants because as above indicated such testimony may not merely have reduced the amount of the liens but also may have established their invalidity because of the failure to file the same within the statutory period.

It follows that the judgment should be reversed on the law and a new trial granted, with costs to the appellants to abide the event.

VAN KIRK, HINMAN, DAVIS and WHITMYER, JJ., concur.

Judgment reversed on the law and new trial granted, with costs to the appellants to abide the event.