Matter of the Estate of JULIUS M. COHEN, Deceased.

(Surrogate's Court, Westchester County, January, 1919.)

Depositions — application to procure depositions of surrogate's chief
  clerk and stenographer denied — privileged communications — Code
  Civ. Pro. § 885.

  All communications between the surrogate and his chief clerk
  and his stenographer arising out of the work in the consulta-
  tion room of the surrogate are privileged and an application

under section 885 of the Code of Civil Procedure to procure the deposition of said clerk and stenographer in regard to such communications will be denied.

APPLICATION made pursuant to section 885 of the Code of Civil Procedure to procure the depositions of the chief clerk and stenographer of the surrogate of Westchester county.

Dos Passos Brothers, for motion.

William J. Fallon, in opposition.

SLATER, S. This is an application made pursuant to section 885 of the Code of Civil Procedure to procure the depositions of the chief clerk and the stenographer of the surrogate of Westchester county, who retired from office on December 31, 1918.

The will of Julius M. Cohen had been admitted to probate by decree of the Surrogate's Court dated January 22, 1918. By order dated December 31, 1918, the surrogate fixed the value of the services of Elwood J. Harlam, attorney for the proponent of the will, after numerous hearings, at $1,200. The moving papers herein disclose that a motion is about to be made to open the " alleged decree " wherein the award was made to said attorney, and that the depositions of such chief clerk and stenographer are necessary to such proposed motion.

Section 885, in terms, covers all cases where a party wishes to use depositions on a motion, whether before or after judgment. *O'Connor* v. *McLaughlin,* 80 App. Div. 305. This section of the Code gives the court the right to exercise its legal discretion.

It is a long established rule of the common law that an attorney cannot disclose communications made by his client to him, nor advice given by him in the course of his professional employment, without the consent of his client. This general rule of the common law

Surrogate's Court, Westchester County, January, 1919.     [Vol. 105.

applied to communications made to judges by those standing in a confidential relationship to them. The rule of the common law affecting attorneys and clients has been written into the statute law of most of the states. In this state section 834 of the Code of Civil Procedure relates to privileged communications between attorneys and clients. This section has been held to cover advice given by the corporation counsel of New York city to another public officer. *People ex rel. Updyke* v. *Gillon,* 9 N. Y. Supp. 243. ·

On the ground of public policy it was the common-law rule that the proceedings of grand jurors were privileged and could not be made public. This privilege extends to all who are necessarily aiding the grand jury, as for example, the state's attorney. *McClellan* v. *Richardson,* 1 Shep. 82.

The office of surrogate is a judicial one, and the chief clerk and stenographer stand in a confidential relationship to the judge of said court in all matters in the consulting room. In the usual public duties of the office of surrogate wherein the acts are ministerial a confidential relationship does not exist. The minutes of testimony made by the stenographer of the court are made public records by law. Public policy demands, and it is a sound doctrine, that those standing in confidential relation with a judge of a court of record, as a clerk and stenographer, with regard to statements in proceedings pending before the court. should not be compelled or allowed to betray the trust and confidence which such relationship implies. For very obvious reasons a judge should not be compelled to state the reason of his decision, nor should he, nor his chief clerk, nor his stenographer, be compelled to give evidence as to that which transpires in the consulting room.

In Colorado the testimony of a judge called as a

witness to state the grounds upon which his decision was based was excluded upon the ground that it was contrary to public policy and convenience to permit a judge who had tried a case and decided it to be called as a witness. *Noland* v. *People,* 33 Colo. 322.

The privilege of inviolability is necessarily extended to the consultations of judges, though they may be examined as to what took place before them on trial, in order to identify the case, or prove the testimony of a witness. Whart. Crim. Ev. 1050. In the preparation of decisions, in the present day, the judge is necessarily aided by the clerk and the stenographer in reducing his mind to a written decision. Such work should be without a public accountability. Otherwise the dignity of the court will be offended. The fair administration of justice could permit of no other course. There is a vast difference between the information which reaches the judge and his assistants through the acts which are ministerial and those which are confidential as are the matters discussed in the preparation of the decisions of the court. It seems a judge could well be questioned regarding acts which were directed against the proper administration of the law, as for example, his advice to destroy public records in his office or direction to commit forgery or perjury.

In formulating a decision public policy directs that the processes by and through which the judge acts should not be questioned. 40 Cyc. 2391, § 8.

I am of the opinion that any and all communications arising out of the work in the consulting room of a surrogate between that judicial officer and the chief clerk and stenographer of such office are privileged communications.

Motion denied.