In the Matter of the Estate of ELVIRA BEHNCKE, Deceased.*

Surrogate's Court, Kings County, October 24, 1939.

* See, also, 172 Misc. 862.

Charles H. Lawson [William Huck, Jr., of counsel], for William
J. Schroeder, proponent.

H. Richard Panzer and Crosswood W. Panzer, contestants in
person.

WINGATE, S. Elvira Behncke died, a resident of the borough
of Brooklyn, on March 13, 1936, leaving three purported testa-
mentary instruments, a will and two codicils. Petition for their
probate was filed on April 1, 1936. The statutory distributees of
the deceased were eight in number. All appeared and waived the
issuance of citation and consented to probate, with the exception
of Hugo Richard Panzer and Crosswood W. Panzer, two sons of
a predeceased sister of the decedent, who were duly cited, appeared
in person and filed the usual omnibus objections. Neither is
admitted to practice in the courts of this State.

Extended examinations by or on behalf of the objectors of the
subscribing witnesses and of opposing parties followed, the former
consuming the better part of three days and requiring conduct
before a referee by reason of animosities which developed between
the first named contestant, who has, throughout, conducted the
contest in person, and certain of the witnesses.

The proceeding finally appeared for trial on the contested calen-
dar of this court on May 11, 1937. Neither of the contestants
appeared. In lieu thereof a "representative," sent by them,
verbally stated that "Mr. Panzer was actually engaged in Court
up State and, therefore, could not be available in person." In
the absence of usual proof warranting adjournment the court
noted the contestants' default, granted the proponent's motion to
dismiss their objections and marked the case for decree.

More than two weeks later a motion was made to open default
and restore the case to the calendar. Being convinced that the
default was deliberate and inexcusable, the court denied the motion.
The contestants thereupon appealed from the order embodying
this decision, and the Appellate Division, by a divided vote, con-
ditionally reversed the order, the conditions being that the appel-

lants pay the proponents $110 costs and disbursements " and be ready to try the issues promptly when the proceeding shall be set down for trial in the Surrogate's Court." (*Matter of Behncke*, 253 App. Div. 835.) This order was entered on January 21, 1938. The costs were paid.

The proceeding next appeared on the call calendar of this court on March 14, 1938, at which time it was adjourned to April eleventh. It was then set down for trial for April eighteenth. On the latter date Mr. H. Richard Panzer applied for an adjournment on the ground that his co-contestant was confined to bed and that he was " an absolutely essential witness for the contestants." On the faith of this representation an adjournment was granted to May ninth. It may be noted parenthetically that when the case was finally tried this co-contestant was not produced as a witness. On May ninth the same representations were again made. The trial was accordingly again adjourned to May sixteenth to give time for supplying additional proof of the illness of the co-contestant. This having been furnished, the case was put over to June sixth. On this date the case was again set for trial for June thirteenth, a motion being simultaneously granted to take the deposition of the co-contestant on written interrogatories. Despite the fact that a referee was appointed to act in this regard, the examination never took place. On June thirteenth a further application for adjournment was made on the same grounds and the case was set over to October tenth.

The trial finally started on October 18, 1938, a preponderant proportion of the first day being devoted to the examination of the jury, Mr. H. Richard Panzer consuming three hours and forty minutes in the process. His co-contestant was not present. The trial was not completed until October twenty-seventh, on which date the case went to the jury, which returned a unanimous verdict in favor of the proponent on all of the issues.

On November seventh an order, returnable on November sixteenth, was secured by the contestants directing the proponent to show cause why the verdict should not be set aside. As indicated by the memorandum of the court in passing upon this matter (*Matter of Behncke*, N. Y. L. J. Nov. 22, 1938, p. 1759), this was predicated on five alleged grounds, none of them relating to the merits of the proceeding. The first four were predicated on assertions of improprieties in the manner in which the jury panel had initially been drawn, the conduct of the trial and the conditions surrounding the deliberations of the jurors. These possessed no semblance of merit. The fifth asserted that previous to the trial

Mr. Charles W. Barnes, who served as foreman of the jury, had been an active participant in a neighborhood quarrel with Mr. " Crosswood W. Panzer " relating to the alleged dangerous condition of certain premises managed by the latter, located on the block on which the former lived.

In aid of this motion Mr. H. Richard Panzer made an additional motion, returnable on the same date, in which, pursuant to the provision of section 307 of the Civil Practice Act and rule 120 of the Rules of Civil Practice, he sought the appointment of an official referee to take the depositions of a considerable number of persons for the establishment of the first four stated grounds of his motion to set aside the verdict, and of Mr. Barnes, respecting the fifth.

Both motions were considered in the decision to which reference has heretofore been made. Four results were therein reached, namely, *first*, that the four asserted grounds for setting aside the verdict were unsubstantial and would supply no legal basis for the grant of such relief; *second*, that since such grounds would not warrant a setting aside of the verdict, the taking of depositions in respect of them would be improper; *third*, that if a controversy, as asserted, had actually taken place, in which Mr. Barnes was actively involved, this might have prejudiced the contestants in their defense against the will; and, *fourth*, that since it was asserted that the former foreman had declined to make an affidavit in this regard the contestants were entitled to take his deposition for use on their motion to set aside the verdict on this ground.

In the order, as resettled, a fifth result was attained, namely, that the deposition of Mr. Barnes should be taken before the court itself, instead of before a referee, as had initially been sought by the contestants.

From this order the contestants appealed to the Appellate Division, which, on June 5, 1939, rendered a decision of unanimous affirmance (*Matter of Behncke*, 257 App. Div. 965), further ordering that the examination of Mr. Barnes " proceed on five days' notice."

As a result of this affirmance the status of the proceeding assumed the form that a verdict sustaining the will had been rendered, that a motion was pending to set aside this verdict on the ground of the asserted prejudice of Mr. Barnes, who had acted as foreman of the jury, by reason of an alleged previous controversy concerning a parcel of real estate controlled by the co-contestant, and that the contestants were entitled to take the deposition of the former foreman before this court, acting as a referee, for the purpose of obtaining a deposition for use in attempted substantiation of their right to have the verdict set aside on this ground.

The deposition was taken on September 19, 1939. It yielded a record consisting of sixty-three pages.

It appeared at the start of the taking of the deposition that Mr. H. Richard Panzer, who conducted the examination, was laboring under a misapprehension as to its nature, since he appeared to consider that it was similar to the usual examination of a witness upon a trial, on which he would be entitled to call other witnesses in an attempt to adduce from them testimony in contradiction of that of the earlier witness. The court endeavored to and apparently succeeded in eradicating this misconception from his mind.

Section 307 of the Civil Practice Act, here in question, was derived from section 885 of the Code of Civil Procedure, which in turn was preceded by a similar enactment embodied in section 401 of the Code of Procedure. Its early history and purpose is traced in *Brooks* v. *Schultz* (3 Abb. Pr. [N. S.] 124, 126, 127). As contained in section 401 of the Code of Procedure, it specified that a person who had refused to make an affidavit for use on a motion might be compelled " to attend and make *an affidavit before the referee.*" (Italics not in original.) The result of such an examination was commonly termed a " compulsory affidavit." (*Brooks* v. *Schultz*, 28 N. Y. Super. Ct. [5 Robt.] 656, 658.) That the alteration in the language of the section in its several continuations through the years has not changed the conception that the deposition, the taking of which is permissible under such circumstances, is, in essence, an affidavit, is demonstrated by the determination in *Wallace* v. *Baring* (2 App. Div. 501, 502), which states that " Such a deposition is simply an affidavit by a person not a party who will not voluntarily testify to facts within his knowledge, which, if necessary for the use of a party to an action upon a motion, the court can compel him to give. \* \* \* What the section provides is for an affidavit or deposition of facts which are within the knowledge of the person sought to be examined."

It follows that the introduction, upon the taking of such a deposition, of testimony of other persons tending to contradict the statements adduced from the affidavit would be as incongruous as the presentation of an affidavit by two persons, the first portion of which affirmed a certain set of facts and the latter attempted to demonstrate that the facts first alleged were untrue and that the first affiant was unworthy of credence.

On September 25, 1939, Mr. H. Richard Panzer obtained an order, returnable on the twenty-eighth, calling on the proponent to show cause, *first*, why he should not be permitted to file additional affidavits to contradict " the testimony of one Charles W. Barnes

denying any acquaintance with the contestant Crosswood W. Panzer;" *second*, contestants should not have leave to file further affidavits to attack the credibility generally of Mr. Barnes and impeach the "testimony" given by him; and, *third*, why his testimony should not be transcribed, authenticated and filed.

It is noteworthy that the proponents opposed this motion in its entirety. In respect of the last noted item of desired relief the answering affidavit reads in part as follows: "if the contestants want to pay for having the testimony transcribed, we have no objection. We do object, however, to having this estate burdened with the cost of stenographic work which is wholly unnecessary. The contestants have called this witness and if they want his testimony written up they should pay for it, in accordance with the usual practice when a party has testimony transcribed."

Despite the opposition of the proponent, this motion was granted by the court in its entirety from the bench. Mr. Panzer was given until October eleventh to file any additional affidavits he might see fit, and his opponent was given until October eighteenth within which to reply.

The transcription of the deposition was read to Mr. Barnes, who swore to it before the court and it was filed, as demanded by Mr. Panzer. On October eleventh Mr. Panzer obtained an additional order to show cause, returnable on the sixteenth, seeking further time for the identically stated purposes of the items designated "first" and "second" above noted, of the motion returnable on September twenty-eighth. Decision on this motion was reserved on the return and is now before the court for determination.

On October eleventh, also, Mr. Panzer filed three additional affidavits on the merits of the motion to set aside the verdict because of the alleged bias of Mr. Barnes. These were verified respectively by "Crosswood W. Panzer" and Louis Weiss on October tenth and by Kate Gariti on October third.

The first matter for consideration concerns the disposition of the motion for further time.

*First*, "to file affidavits to contradict the testimony of one Charles W. Barnes denying any acquaintance with the contestant Crosswood W. Panzer arising with respect to the premises 16 Russell Place, Brooklyn, New York," and

*Second*, "to file other and further affidavits to attack the credibility generally of the said Charles W. Barnes and to impeach the testimony given by him."

In evaluating the propriety of the grant of this motion, the fundamentals of the situation must be viewed in their proper

perspective. Pertinent for recollection in this connection is that the motion to set aside the present verdict was argued on November 16, 1938, approximately three weeks less than a year ago, at which time only a single affidavit by a person asserting any personal knowledge of the facts was submitted, although the burden of demonstration of the propriety of setting aside the verdict rested upon the moving party. (*Poillon* v. *Poillon*, 75 App. Div. 536, 538.) Under ordinary circumstances the motion must have been decided on this affidavit alone. The moving party, however, sought leave to supplement this by one, and only one, additional demonstration, namely, the compulsory testimonial affidavit of Mr. Barnes. This request was promptly granted and such testimonial affidavit now forms a part of the record of the motion of the contestants themselves. They here seek to impeach its showing in two ways, both of which are directed to the credibility of the affiant, which is not an issue in the proceeding. The first is by a would-be attack on the statement in his testimonial affidavit that he was not acquainted with the co-contestant and the second by a demonstration of an absence of his " general credibility."

Whether or not he was acquainted with the second Mr. Panzer has no direct relevancy upon the question of his bias. His general credibility, even if demonstrated to be nil, would not prove affirmatively those things upon which the contestants must sustain the burden of proof to succeed on their motion. (*Matter of St. John*, 163 Misc. 17, 21.)

The impropriety of permitting the contestants to litigate a feigned issue of this variety becomes obvious when it is recalled that they themselves, and they alone, have injected this issue into the proceedings. At no time has any issue been raised by their opponents. The latter have consistently stood on the position stated in the affidavit of Charles W. Lawson, verified November 16, 1938. So far as concerns the only ground now before the court for setting aside the verdict, namely, the alleged controversy between Mr. Barnes and the co-contestant, this was merely an assertion that the allegations of the affidavit of " Crosswood W. Panzer," which alone was tendered in its support, alleged no facts. In other words, the continuous attitude of the proponents has in substance amounted to a demurrer to the allegations of the contestants.

The latter, however, have, in effect, tendered five affidavits in support of their motion, that of Mr. " Crosswood W. Panzer " at the time of the initial submission of the motion, the three additional affidavits filed on October eleventh, and the testimonial

affidavit of Mr. Barnes, taken and filed on the insistence of the contestants and in the face of the opposition of the proponent. They were under no obligation to submit it in the first instance. (*McCue* v. *Tribune Association*, 1 Hun, 469, 470; *Brooks* v. *Schultz*, 28 N. Y. Super. Ct. [5 Robt.] 656, 658.) In the case last cited the court said: " The examination, when completed, is nothing more or less than a compulsory affidavit; an affidavit which the party at whose instance it is taken, may read or omit to read upon the motion, at his pleasure, precisely as he might or might not read an affidavit voluntarily made."

This was clearly brought to the attention of the contestant by the court at the time it was taken, when it stated: " If you want to use that deposition to aid your motion, all right; and if you don't want to you don't have to, and the other side may, and that's all there is to it."

Why the contestants insisted, in the face of opposition by their opponents, in making a part of their affirmative demonstration for relief, this testimonial-affidavit, which, if credited, would utterly destroy any semblance of merit of their application to set aside the verdict, is a question difficult of answer unless it were to be assumed that it was merely an effort to lay a foundation for an attempt to secure a further postponement of a final adjudication on the merits.

Irrespective of the motive which may have actuated it, the contestants may not be granted additional time in which to present affidavits to refute their own demonstration. The motion initiated by the order to show cause dated October eleventh and returnable on October sixteenth, is accordingly denied, with costs.

Since, by reason of this decision, nothing further is permissible of submission in respect of the motion to set aside the verdict on the ground of the alleged controversy between Mr. Barnes and the co-contestant, the time for decision thereof has now arrived.

As previously noted, the contestants have submitted four affidavits in addition to the compulsory testimonial affidavit of Mr. Barnes. The first for consideration is that of Louis Weiss verified October 10, 1939. This states that the deponent had lived for twenty-two years on the block in which the property stated to have been the basis of the alleged controversy was located and that he is acquainted with the residents of the block and also with the co-contestant. That the premises 16 Russell place became vacant and, in the opinion of the affiant, in a structurally dangerous condition, which tended, in his opinion, to depreciate the value of the adjoining buildings and also that of Mr. Barnes, which was

across the street; that the deponent became very angry at the co-contestant for leaving the premises in this condition and consulted with certain neighbors as to means for correcting the condition. " A petition to the Building Department requesting action against Mr. Panzer was circulated and signed by a good many neighbors. I do not know whether Mr. Barnes signed the same," that Mr. Barnes could not avoid knowledge of the physical condition of 16 Russell place.

The next affidavit is that of Mrs. Kate Gariti, the owner of the house on the other side of 16 Russell place. It states acquaintance with Mr. Barnes and recites the bad condition of 16 Russell place and that deponent talked about it with her neighbors Antonio Cinelli and Louis Weiss. An inclusion in the typewritten affidavit of the name of Mr. Barnes in this connection is stricken out and such elimination initialed by the affiant. The opinion is then stated that the condition of the property injuriously affected that of Mr. Barnes. The affidavit continues that she consulted with her neighbors respecting possible remedy of these conditions. A statement in the affidavit, " I know that Mr. Charles W. Barnes participated in some of these discussions," is stricken out and the erasure initialed by the affiant. The affidavit then recites the petition to the building department and adds: " I do not know whether Mr. Barnes signed this petition." The final paragraph states: " Any statement by Mr. Charles W. Barnes that he did not know Mr. Crosswood W. Panzer was not prejudiced against him by reason of the situation in question is highly inaccurate." What this sentence is supposed to prove is problematical. There is no statement of the reverse by Mr. Barnes in the record, and, in any event, the issue is whether Barnes was prejudiced against Panzer and not whether Panzer disliked Barnes. The affidavit concludes that the deponent saw Barnes talking with Panzer " on at least one occasion."

The third of the final set of affidavits is by " Crosswood W. Panzer," verified October 10, 1939. This recites his management of 16 Russell place and his frequent visits to the neighborhood and meetings with Mr. Weiss, Mrs. Gariti and her daughter. It then continues: " On several occasions I observed a gentleman in front of premises 17 Russell Place, directly opposite 16 Russell Place. I was advised by neighbors that this was Mr. Charles W. Barnes. * * * On a visit to the premises subsequent to the Hearing and Survey held by the Building Department, within and without the premises 16 Russell Place, Mr. Barnes stepped over to my car and inquired if I was the owner, and complained of the bad condition

of the building. I advised him as I had told the others who were likewise affected, that if he helped keep vandals out of the building, I would do my best to see it did not stay an ' eye sore.' His attitude was hostile."

The earlier affidavit of the same affiant is extremely brief and, so far as even remotely bearing upon the issue, reads: " Deponent formerly managed and serviced premises 16 Russell Place, Brooklyn, N. Y. A situation arose in respect to the management of 16 Russell Place which incurred the enmity of the entire block in question. All of the neighbors organized against deponent and legal action was threatened. Deponent distinctly recalls that the immediate neighbors, Louis Weiss, of 14 Russell Place; a Mrs. Gariti, of 18 Russell Place, and Charles W. Barnes, of 17 Russell Place, were conspicuous in the movement against him _nd that there was ill feeling manifested against him by these parties."

The foregoing is the total which has been tendered by the contestants in support of their motion to set aside the verdict, with the exception of the testimonial affidavit of Mr. Barnes. Since the record embodying this affidavit comprises sixty-three pages, it is obviously incapable of complete summarization in a decision of reasonable length. Much of it is totally irrelevant in any event. Certain excerpts therefrom are, however, worthy of repetition. Mr. Barnes stated that he had never seen or heard of Mr. Crosswood W. Panzer prior to the trial and never spoke to him; that he signed no complaint or petition to the building department respecting 16 Russell place; that the condition of the premises on the other side of the street was no concern of his. " It wouldn't bother me if all the houses in the block fell down except my own." " Ever since that case has been on I have been pestered to death with Mr. Panzer going around the neighborhood circulating my name, and I don't talk to half of the people and I don't know why they pick on me. ' And did you say you don't know my brother Mr. Crosswood W. Panzer?' And I never seen the man in my life, and I don't know this man." " Q. And you deny absolutely having any knowledge that there was a concerted neighborhood movement to bring about the removal of these premises? A. I don't know anything about it. Q. As unsafe or hazardous? A. I don't know anything about it. Q. And you deny absolutely participating in that movement referred to in the previous question? A. Yes. Q. In any way, form or shape? A. Yes. Q. That is correct, is it? A. Oh, that is correct sir. I did not." " I don't keep tab on the neighbors."

It is obvious that the foregoing statements of Mr. Barnes, if credited, affirmatively establish a complete absence of any merit in the motion of the contestants. Although the court, acting in the capacity of referee, saw and heard the affiant and was favorably impressed with his credibility, it is disabled from giving effect to this feeling in its judicial capacity, despite the fact that the contestants, by insisting on the submission of his compulsory affidavit on their motion, have in substance vouched for his credibility themselves. (*Hankinson* v. *Vantine*, 152 N. Y. 20, 27; *Potchasky* v. *Marshall*, 211 App. Div. 236, 237; *Freebold* v. *Town of Glen*, 211 id. 249, 251; affd., 241 N. Y. 615; *Barr* v. *Sofranski*, 130 App. Div. 783, 789.)

There is, therefore, presented the bizarre situation of a moving party deliberately, and with full knowledge of its contents, presenting in support of his motion an affidavit which is emphatically and completely contradictory of everything for which he is contending.

In the opinion of the court, the compulsory affidavit of Mr. Barnes, the filing of which as part of the record was forced by the contestants over the opposition of the proponent, is binding upon the former and is conclusive of the absence of merit of the motion for a new trial. For the purpose of evaluating the demonstration of the remaining portions of the motion record, it will be discarded as nugatory

The moving affidavits of Mr. H. Richard Panzer are worthless for any probative purpose as they are predicated solely on hearsay. (*Brandly* v. *American Butter Co.*, 130 App. Div. 410, 411.) The affidavits of Mr. Weiss and Mrs. Gariti in no wise connect Mr. Barnes with the controversy. This leaves merely the two affidavits of Mr. " Crosswood W. Panzer." His first statement in the 1939 affidavit was merely that he saw a man across the street, who, he was told, was Mr. Barnes. This is again hearsay which is worthless. The following statement that Mr. Barnes came to his car on one occasion is subject to the same infirmity, since the logical inference from the preceding statement is that his only knowledge of the identity of the person who spoke to him was the former hearsay information. Even were this invalidating fact to be disregarded, the affidavit states no facts respecting the conversation, reciting only that the man " *complained* of the bad condition of the building " and that " his attitude was *hostile.*" Whether a statement amounts to a " complaint " or whether actions are capable of being characterized as " hostile " are pure conclusions. It is elementary that a mere statement of conclusions is valueless in any pleading and for any purpose, and that to possess cogency, the

essential facts themselves must be alleged. (*Wishny* v. *Gottfried*, 131 N. Y. Supp. 593, 594, not otherwise reported; *Graham* v. *Buffalo Gen. Laundries Corp.*, 235 App. Div. 246, 247; affd., 261 N. Y. 165; *Thomas* v. *New York & G. L. R. Co.*, 139 id. 163, 180; *Trotter* v. *Lisman*, 199 id. 497, 502; *Netley Offices* v. *Burgundy Realty Corp.*, 238 App. Div. 559, 562, 563; affd., 265 N. Y. 581; *Petty* v. *Emery*, 96 App. Div. 35, 38; *Maylender* v. *Fulton County Gas & Electric Co.*, 131 Misc. 514, 517; Surr. Ct. Act, § 49.)

The earlier affidavit is subject to the same infirmities. It states that the neighbors " *organized* against deponent;" that Mr. Barnes, with others " were *conspicuous* in the movement " and that " there was *ill feeling manifested* against him by these parties." All of these statements are conclusory.

It follows that the record, as submitted, contains no single legally valid allegation of fact to sustain the motion to set aside the verdict, but, on the contrary, contains an affirmative demonstration of the impropriety of the adoption of such a course. The motion will, accordingly, be in all respects denied, with costs.

Enter orders, and decree admitting will to probate, on notice, in conformity herewith.