In the Matter of the Estate of ELVIRA BEHNCKE, Deceased.

Surrogate's Court, Kings County, December 19, 1939.

H. *Richard Panzer* and *Crosswood W. Panzer*, contestants in person, for the motions.

*Charles H. Lawson* [*William Huck, Jr.,* of counsel], for William J. Schroeder, proponent, opposed.

WINGATE, S. The history of this litigation and the extended efforts of the contestants to avoid the unanimous verdict, entered on October 27, 1938, establishing the validity of the will, have been fully reviewed in a former opinion of this court, which decided adversely to the contestants a motion to set aside the verdict by reason of the asserted prejudice of one of the trial jurors. (See *Matter of Behncke*, 172 Misc. 532.)

Following this decision, an order was duly made and entered on the 2d day of November, 1939, denying the motion to set aside the verdict. A decree was simultaneously entered admitting the will to probate and assessing costs against the contestants in the sum of $549.

On November 3, 1939, a notice of appeal was filed in this court by the contestants, which was expressly limited to appeal " from the order of the Surrogate's Court of Kings County in the above-entitled proceedings made and dated November 2, 1939, and filed in the office of the Clerk of the said Surrogate's Court on November 2, 1939, which said order denies contestants' basic motion to set aside the verdict herein and for a new trial herein, and the contestants hereby appeal from each and every part of said order as well as from the whole thereof." A bond in the sum of $250 was filed.

Thereafter, on or about November 15, 1939, the successful proponents applied for and secured a transcript from this court of the judgment for costs, included in the decree of probate, as above noted, and on that day filed it in the office of the county clerk of Kings county.

On December 1, 1939, the contestants served upon the attorneys for the proponent a notice of motion, returnable on December seventh, for the taking of " compulsory affidavits," pursuant to section 307

of the Civil Practice Act, of six clerks and attaches of this court for use on a new motion " to set aside the verdict in this proceeding." It may be noted, in passing, that no motion of this variety has been made, but that the supporting affidavit recites an intention to make such a motion.

On December second the contestants filed a new notice of appeal from the decree admitting the will to probate, which notice further contained a statement of intention to bring up for review the order denying the motion to set aside the verdict, to which, alone, the notice of appeal filed on November second was addressed. No undertaking staying execution of the decree has been filed.

On December sixth the contestants served an additional notice of motion returnable December eleventh, seeking two varieties of relief, namely, *first*, a stay of proceedings until the determination of the appeal from the order refusing to set aside the verdict, and, *second*, " an order directing the County Clerk of Kings County to vacate and set aside the docket entry " of the judgment for costs on the decree admitting the will to probate, made on November fifteenth.

These two motions are now before the court for decision. They will be considered in inverse order.

As hereinbefore noted, the appeal, notice of which was filed in November, was only from the order denying the motion to set aside the verdict. Since the decree admitting the will to probate was a distinct and diverse determination, and this appeal was not prosecuted therefrom, it could, for obvious reasons, effect no stay in respect of the directions of the decree. (*Matter of Williams*, 135 App. Div. 123, 126; *Henry* v. *Henry*, 4 Dem. 253, 264.)

Even had that notice of appeal been directed to the decree and not to the order only, it would not, however, under the facts disclosed, have effected a stay of the execution of the directions of the decree. This follows by reason of the fact that since the decree was not within the exceptions of section 87 of the Surrogate's Court Act, the final sentence of the section becomes applicable and the inquiry is remitted to the provisions of the Civil Practice Act, as to when the perfecting of an appeal will accomplish a stay of execution.

The only undertaking filed by the contestants was that of $250 for costs, as required by section 1525 of the Civil Practice Act. Such an undertaking does not stay execution in the absence of an order directing such a stay (Civ. Prac. Act, § 614), or the giving of " the security required to perfect an appeal to the Court of Appeals from a judgment of the same amount ' (Civ. Prac. Act, § 615), which is in a sum equal to that fixed in the judgment. (Civ. Prac. Act, § 594.)

It follows, therefore, that even if the appeal had been prosecuted from the decree, no stay of execution in respect of its directions would have become effective unless, in addition to the amount for which the undertaking was actually given, it had undertaken to pay the $549 directed to be paid by the decree. (*Mossein* v. *Empire State Surety Co.*, 97 App. Div. 230, 232; *Carter* v. *Hodge*, 150 N. Y. 532, 535.)

It follows that the proponents were completely at liberty to proceed under the terms of the decree. The acts performed by them were entirely proper and there is no reason for expunging the record of judgment entered in the county clerk's office. No adequate reason has been advanced as to why the contestants should not comply with the usual requirements if they desire to procure a stay of execution.

The motion returnable on December eleventh is accordingly in all respects denied, with costs.

The remaining questions for consideration relate to the propriety of granting the motion for the taking of the compulsory affidavits under section 307 of the Civil Practice Act.

The moving affidavit on this application is voluminous. Bereft of immaterialities, it asserts that one Joseph Tetz performed duties in and around the court during and subsequent to the trial, which the deponent believes were properly performable by a court officer. He then goes to considerable lengths to demonstrate that Mr. Tetz was not a regularly appointed court officer, but on the contrary was and is in the classification of employee known as "laborer," and expresses the opinion that his assignment to the duties actually performed by him was improper. He thereupon asserts that from the time they were impanelled, until the rendering of the verdict, the jury was in Mr. Tetz's charge.

The apparent gist of the application is found in the paragraphs of the affidavit numbered " 2 " and " 3 " which read as follows:

" 2. That the jury from the time they were impanelled in this proceeding until they returned their verdict were in unlawful communication and unlawfully communicated with the said Joseph Tetz, and *vice versa*, and that the said Joseph Tetz was in unlawful communication and unlawfully communicated with the said jury during the time hereinafter especially enumerated, and that thereby these contestants were deprived of the right of trial by jury as prescribed by law.

" 3. That the contestants, above-named, more particularly were prejudiced and harmed by reason of the presence and conduct of the said Joseph Tetz in attendance upon the said jury because of certain remarks intentionally or unintentionally made by the

said Joseph Tetz to one or more members of the said jury which said remark or remarks referred specifically to contestant, H. Richard Panzer, as follows:— ' Hang him, he's a hun   *   *   * ' and divers other prejudicial and harmful remarks · at present unknown to contestants."

It has been held in respect of grant of a motion for the taking of a " compulsory affidavit " of the nature here sought: " The court is to exercise a discretion in regard to the propriety of granting such an order. The language of the Code [now incorporated in rule 120 of the Rules of Civil Practice] is, ' Such court may appoint a referee; '— that is, if the facts presented are such as establish the necessity or propriety of such order. Of this the court, not the party, is to judge." (*Dauchy* v. *Miller*, 16 Abb. Pr. [N. S.] 100, 102; to like effect, see *Matter of Cohen*, 105 Misc. 724, 725.)

The question thereupon arises as to whether this judicial discretion should be favorably exercised on the demonstration of the present record. The gravamen of the allegations is that Tetz was classified on the city payroll as a laborer. This is an unquestionable fact. It is also asserted that he performed certain labors in and about the court which the applicant believes should have been performed by a person bearing the title of court attendant. These assertions of themselves would supply no demonstration of prejudice which would warrant a setting aside of the verdict. The applicant then asserts that Tetz and the jurors " unlawfully communicated " with each other. Whether a " communication " has taken place, and if so, whether it was " unlawful," are merely conclusions of the affiant, which are worthless as probative assertions in any connection and for any purpose. (*Wishny* v. *Gottfried*, 131 N. Y. Supp. 593, 594 [not otherwise reported]; *Graham* v. *Buffalo Gen. Laundries Corp.*, 235 App. Div. 246, 247; affd., 261 N. Y. 165; *Thomas* v. *New York & G. L. R. Co.*, 139 id. 163, 180; *Trotter* v. *Lisman*, 199 id. 497, 502; *Netley Offices, Inc.*, v. *Burgundy Realty Corp.*, 238 App. Div. 559, 562, 563; affd., 265 N. Y. 581; *Petty* v. *Emery*, 96 App. Div. 35, 38; *Maylender* v. *Fulton County Gas & Elec. Co.*, 131 Misc. 514, 517.)

This narrows the examination of the sufficiency of the allegations of the affidavit, so far as Tetz himself is concerned, to the statements in the quoted paragraph numbered " 3," namely, that Tetz said to the jury, " Hang him, he's a hun," and " divers other prejudicial and harmful remarks unknown to contestants." It is placing a considerable strain upon the credulity of the court to seek to have it accept the affiant's conclusory allegation that the alleged " other remarks " asserted to have been made by Tetz were " prejudicial and harmful," when the moving party, himself,

avows his ignorance as to what they were, admitting for purposes of argument only that any remarks whatsoever were made.

This reduces the entire petition, so far as any possible semblance of merit is concerned, to the assertion that between the date of the impaneling of the jury and the rendition of the verdict, in other words, between October 18, 1938, and October 27, 1938, Tetz said to the jury, "Hang him, he's a hun." In connection with this portion of his sworn assertions, the moving party would appear to be impaled on the horns of a dilemma. The remark, if actually made, occurred over thirteen months ago. Either he heard it himself, in which event he should have included this in his former motion to set aside the verdict, and his failure to move to set aside the verdict on this ground is gross laches, particularly since the intervening period has largely been consumed in earnest efforts to cause the verdict to be set aside on a variety of other grounds; or he did not hear it himself, and his present unqualified assertion thereof, as a matter of personal knowledge, is untrue, and it is either a figment of his imagination or was reported to him by some other person, whose identify and actual statements are undisclosed. Under such circumstances, the statement must be deemed at best hearsay and probative of nothing. (*Brandly* v. *American Butter Co.*, 130 App. Div. 410, 411.) Whichever of these alternatives be accepted as the fact, any motion tainted by such a circumstance would be improper of grant.

A further pertinent fact, however, emerges in respect of the motion for taking the compulsory affidavit of Mr. Tetz. This is that an affidavit by Mr. Tetz, has in fact been filed, and is a part of the present record. The moving party complains bitterly at the acceptance of this affidavit, stressing the fact that it was filed on December thirteenth, whereas the respondent on this motion was granted only until four P. M. on the twelfth to submit answering affidavits. This objection comes with particularly ill grace from him, since the court has repeatedly accorded him much broader latitude in this regard, and, as noted in the previous opinion, went so far as to permit him to file affidavits in support of his previous motion to set aside the verdict, eleven months after they were properly due. If, therefore, a technical default of a few hours has occurred in the filing of these affidavits, the court exercises its discretionary authority to extend the time of filing *nunc pro tunc*. The moving party has had and exercised the opportunity to reply to the affidavits which were so filed and can, therefore, not be prejudiced on the merits.

The affidavits so filed are three in number. The first is by Mr. Tetz who states that his employment classification is that of a laborer; that the duties performed by him during the trial in ques-

tion were those of a messenger; that at no time in the course of the trial was the jury in his charge or custody but was at all times in that of Mr. John H. Sachs and Mr. Abraham Grayer, two court officers. He further categorically denies that he either directly or indirectly addressed any remark to any member of the jury, and specifically denies that he made the concrete statement attributed to him by the moving party. The other two affidavits are those of the Mr. Sachs and Mr. Grayer, referred to, and are completely corroborative of that of Mr. Tetz.

The present pertinence of Mr. Tetz's affidavit arises not so much from its indication of the lack of substance of the motion to set aside the verdict, which the moving party asserts his intention of making, as in respect of the propriety of grant of the present motion to compel him to make an affidavit. Section 307 of the Civil Practice Act authorizes an application for the taking of a " compulsory affidavit " upon a demonstration " that such person has refused to make affidavit of facts which the party desiring his testimony believes are within his knowledge." This requirement is stressed in *Erie R. Co.* v. *Gould* (14 Abb. Pr. [N. S.] 279, 281) in which it is pointed out " that the party to the action who makes application should know or be advised what sort of an affidavit is necessary, and that it can be made by the person he names." In the present situation it is obvious that the sole purpose of the moving party, so far as Tetz is concerned, is to obtain a " compulsory affidavit " from him to the effect, *first*, that his employment classification was that of " laborer;" *second*, that he had charge of this particular jury, and *third*, that he communicated with its members in a manner which was prejudicial to the applicant.

The taking of his affidavit for the first purpose is unnecessary, since the affirmative of the fact is a matter of record, of which the court takes judicial notice. The affidavit of Mr. Tetz, now in the record, demonstrates the negative of the second and third points, at least so far as he individually is concerned, and proves to this extent that he cannot make an affidavit in support of the positions to which the applicant would like him to depose.

As the court interprets section 307, its purpose is to secure an affidavit from a person who possesses pertinent information which he will not disclose and not to cross-examine one who has made an affidavit which is not to the liking of the moving party.

In view of the composite demonstration of the record and for the reasons hereinbefore stated, the taking of a " compulsory affidavit " of Mr. Tetz is denied in the discretion of the court.

So far as concerns the taking of the " compulsory affidavits " of the other persons named in the notice of motion, the moving

affidavit contains conclusory and argumentative allegations only, respecting the subjects upon which affidavits are desired from them.

The proper practice in this regard is indicated in *Dauchy* v. *Miller* (16 Abb. Pr. [N. S.] 100, 102), in which the court observes: "The affidavit should specify, with reasonable certainty, the subject upon which the witness was requested to depose, and the facts claimed by the party to be within the knowledge of such witness, and bearing upon the merits of the motion desired to be made. This requisite would not only enable the court to determine the propriety of granting such order, but would furnish some guide to the examination. It is apparent that it was not intended to authorize an examination of a witness, by way of experiment, to ascertain what he might state in regard to the controversy, leaving the party to his election whether or not to use the examination upon a motion, or in some manner and for some purpose upon the trial of the action. The courts should see that the provision in question, which is valuable for the purpose intended, be not perverted so as to become an instrument of injustice and oppression to parties or witnesses. The affidavit in question merely states, upon this subject, that it will be necessary to have the affidavit of Nathan Dauchy for the purpose of the motion — not a fact is stated which the defendant supposed to be within the knowledge of said Dauchy — and it will be observed that the opinion of the defendant, in regard to the necessity of Dauchy's affidavit to be used upon the motion, does not purport to be based even upon the advice of counsel.

"It would be a safe and convenient practice for a party to prepare the required affidavit and submit it to the witness, and request him to verify the same; and in case of refusal, to make the proposed affidavit a part of the papers upon which the order is applied for. Of course such practice is not indispensable; but in this, or some other form, the court should be informed wherein the examination of the witness is material and necessary to the motion intended to be made." (See, also, *Cockey* v. *Hurd*, 14 Abb. Pr. [N. S.] 183, 190.)

The entire basis of the motion which the applicant intends to make is the alleged prejudicial remarks by Tetz to members of the jury. The court will take judicial notice of the functions and scope of employment of the several attaches of the court and as a result thereof must conclude, in the absence of particular specification approximating that indicated in the foregoing quotation from *Dauchy* v. *Miller* (*supra*), that none of those whose examinations is sought is in a position to make an affidavit possessing any pertinency to the issue. The taking of their "compulsory affidavits" is accordingly also denied, with costs, in the discretion of the court.

Enter orders on notice in conformity herewith.