In the Matter of the Estate of LOUISE D. REYNOLDS, Deceased.

Surrogate's Court, Broome County, September 26, 1952.

*Frederick J. Meagher* and *Robert J. Madigan* for Arley Sweetland, petitioner.

*Samuel H. Pearis, Robert D. Stone, C. Addison Keeler, Prescott D. Perkins, John M. Keane* and *Emory C. Resseguie*, in person, for Emory C. Resseguie, respondent.

PAGE, S. A petition for the probate of the alleged last will and testament of Louise D. Reynolds, deceased, was filed in this court on the 22nd day of July, 1952, and the proceeding thereupon is pending. Thereafter, on the 5th day of September, 1952, a petition was filed by one Arley Sweetland, alleging that he, in her lifetime, had been a very close friend of Louise D. Reynolds who is now deceased and that said Louise D. Reynolds " many times assured your petitioner that she had drawn a Will in which she left your petitioner a considerable amount of

property." Said petition further alleges, "That petitioner has been informed and believes that the decedent made several last wills and testaments which are now in the possession of Emory Resseguie, attorney at law, 703 Press Building, Binghamton, New York," and that said Emory Resseguie has admitted that he has " these last wills and testaments of said decedent in his possession, but he is concealing them and refuses to show them to your petitioner," and further, " That your petitioner is certain that he is named as a legatee in the last wills and testaments of Louise D. Reynolds which Emory Resseguie has in his possession." The order isued upon said petition directed that said Emory C. Resseguie " attend before this Court on the 8th day of September, 1952 at 10:00 o'clock —, and be then and there examined in the premises and then and there show cause why an order should not be made requiring him to produce the last wills and testaments of Louise D. Reynolds, deceased, which are described in said petition."

On the return day, the respondent appeared specially and made a motion to " dismiss the petition herein on the grounds that said petition does not show facts sufficient to constitute any ground for the relief sought in the said petition or for any other relief."

The proceeding instituted by the above-mentioned order to show cause is entirely independent of, although related to, the previously mentioned pending proceeding for probate. The primary legal sanction of the present proceeding is section 137 of the Surrogate's Court Act, the herein pertinent provisions of which are as follows: " Whenever it shall appear by petition of any person *claiming* to be interested in the estate of a decedent, including a creditor, that there is reasonable ground to believe that any person has destroyed, retained, concealed, or is conspiring with others to destroy, retain or conceal a will or testamentary instrument of a decedent, or has any knowledge as to such facts, the court *must* make an order requiring the respondent to attend and be examined in the premises, and may in such order or otherwise in the proceeding require the production of any will or testamentary instrument." (Italics supplied.)

Based upon the provision of section 49 of the Surrogate's Court Act (in this connection citing *Matter of Baker,* 160 Misc. 862, and *Matter of Behncke,* 172 Misc. 532) and, presumably, also, upon the practice sanctioned by grounds " 2 " and " 4 " of rule 106 of the Rules of Civil Practice, the respondent contends that the petition herein must be dismissed.

It is contended that the petition is fatally defective in that it does not satisfy the requirement of the statute as its construction has been established by precedents by " demonstrating a reasonable ground for the belief that there are other wills of decedent herein than the one offered for probate, and that if such other alleged wills were produced, it would appear that the petitioner is entitled to an interest in the estate." It is pointed out by the respondent that the petition states only two allegations in any way designed to show that the petitioner is named in other wills of the decedent, viz.: (1) The allegation to the effect that said Louise D. Reynolds in her lifetime had assured the petitioner that she had drawn a will in his favor, and (2) that the petitioner is " certain " that he was named as a legatee in one or more of the alleged wills in question. This second allegation is, of course, merely a conclusion adding nothing to the position of the petitioner.

It is further contended that the petition is insufficient in that it does not allege the existence of any *specific* will or wills, nor the date or dates of execution thereof, nor the names of subscribing witnesses, nor the nature or amount of the legacy or interest claimed to have been provided for petitioner.

The function and purpose of section 137 of the Surrogate's Court Act is to provide a procedure for compelling the production of testamentary instruments to the end that they and whoever has them in his possession or control, or would be likely to know facts concerning them, may be examined by an allegedly interested party.

The statute provides that, " the court must make an order requiring the respondent to attend and be examined in the premises," at the instance of " any person *claiming* to be interested in the estate of a decedent ". This is the minimum requirement for invoking the application of this section. But it appears to be all that is required in any case wherein it is not obviously apparent that the petitioner is merely a gratuitous interloper alleging a purely sham basis of his endeavor to be a troublemaker. Of course, there must be some alleged factual support for the application. But, if it reasonably appears that the petitioner is or may be acting in good faith, the question is, may not the minimum factual requirement be satisfied by even so abbreviated and easy-to-allege basis as is here before us?

In the present case this requirement is assumed by the petitioner to be met by about the slenderest of all conceivable bases in support of such an application. This is that at some unspeci-

fied time or times, the testatrix told the petitioner that she had made a will in which he had been beneficially mentioned. As is pointed out by respondent in support of his present motion, it would be very easy for anyone in the world to supply an alleged factual basis if that requirement contemplates no greater cogency than that found in the present instance. But, particularly in the case of a wealthy testatrix having no close relatives and, therefore, few if any natural objects of her·bounty, the further allegation that the petitioner was her close friend may be regarded as sufficiently corroborative.

In this connection it is important to bear in mind that the purpose of the statute is limited to merely a tentative and preliminary " fishing expedition ". It is a special species of discovery. The determination of any ultimate right whatsoever is not involved. The present proceeding will be at an end as soon as it may be shown by respondent that the suspicion of his having testamentary instruments in his possession is unfounded, or that, if he has any such documents, that the petitioner is not named in any of them. In the event that the petitioner discovers that his present " suspicion " is well founded and he should desire to do something further in the situation, he would need to resort to a proceeding of a different type and purpose.

The precise question herein is as to sufficiency of the petition. In adopting the present procedure, a motion to dismiss for failure of the petition to state facts sufficient to entitle the petitioner to the relief sought herein, respondent and his counsel have shown themselves to be resourceful. There appears to be no reported precedent. However, in various other connections, courts have had occasion to consider and interpret the statute with which we are presently concerned, viz., section 137 of the Surrogate's Court Act.

In *Matter of Hardy* (216 N. Y. 132, 136) in a case which had been instituted under the predecessor of our present section 137 of the Surrogate's Court Act (Code Civ. Prac., § 2607), the court referred to the statutory provision as contemplating, " a proceeding in advance of the proceeding to probate the will to carry out and make practical the procedure in Surrogate's Court ".

In *Matter of Jussila* (104 Misc. 579) section 2607 of the Code of Civil Procedure (present Surrogate's Ct. Act, § 137) was referred to by the court as being the procedure specifically designed to compel the production of a paper known or believed to be in existence and purporting to be testamentary in character.

In *Matter of Work* (151 App. Div. 707, 1st Dept. [1912]), after a will of a deceased and several codicils had been admitted to probate, application had been made to the Surrogate for the discovery of alleged subsequently executed codicils which, it was claimed, had been and were being fraudulently suppressed and concealed. The proceeding was under section 2621-a of the Code of Civil Procedure (now Surrogate's Ct. Act, § 137). The Surrogate dismissed the petition on the ground that he had no power to entertain the proceeding so long as the probate decree stood. On appeal, the court stated and held (p. 708): "We think that the learned surrogate was justified in dismissing the proceedings, but not for the reason assigned by him. This proceeding is not an attack upon a probate decree, and we think it may be instituted irrespective of whether there has been such a decree. If a subsequent alleged will or codicil should be discovered, the probate decree would remain unaffected until a direct attack upon it should be made. The fact that such an attack might be made if the petitioner should attain his purpose in this proceeding constitutes no objection to the maintenance of it."

Upon this reasoning a reversal of the Surrogate was indicated, but the Appellate Division further stated and held (p. 709): "However, it will be observed that the language of the statute is, ' on the return of the citation the court may order the suspected person or persons,' etc. While the petition may have been sufficient to justify the issuance of a citation, the surrogate was not required to proceed further, upon objection being made, unless the petitioner showed some ground or reason for the suspicion that there were other codicils, and that, if they were produced, it would appear that he was entitled to an interest in the estate."

Because of the above-stated exceedingly slender factual bases, in support of the relief prayed for, appearing in the present petition, *Matter of Work* (*supra*) is strongly relied upon by the respondent herein. But the present case may be at least to some degree distinguishable. The petition does, in effect, allege that the respondent has admitted having some wills, that the petitioner had been a close friend of the decedent and that the latter in her lifetime had repeatedly told him that she had made a will in which he had been named as a substantial beneficiary. Whether or not there were any approximately equivalent allegations in the *Work* case is not disclosed to us.

In any event, a more thoroughly reasoned and later case is *Matter of Johnson* (253 App. Div. 698) a case in the Second Department in 1938. The opinion in this case was written by the possessor of one of the keenest and ablest legal minds ever known to the Bench and Bar of our State, Mr. Justice ROWLAND L. DAVIS. In it I think we find a better elucidation of the purpose and effect of our present section 137 of the Surrogate's Court Act. In this case, the comment of the court, in part, was as follows (p. 700) : '' The purpose [of Surrogate's Ct. Act, § 137] is to *discover* whether any such paper *purporting* to be a will was drafted and executed or purported to be executed, *without going into the question of its validity;* who were the persons present; who were witnesses to such will; who had the custody of the will at that time or at any subsequent time; the possession thereof by any person and what was done with it; when and where it was last seen; and what persons have conspired to destroy, retain or conceal such will or testamentary instrument, or have knowledge of such facts. Assuming that such limitation would have been placed on the examination of the witnesses by the surrogate, the language of the order was not prejudicial. The purpose of the statute is *salutary* in that it offers *opportunity* to interested persons *to discover* the existence of a will which *may* represent the plan and purpose of the testator better than the one offered for probate. These proceedings do not interfere with any probate proceedings undertaken unless interested parties produce, *in that proceeding,* facts which challenge the validity of the will.'' (Emphasis supplied.)

The motion under present consideration must be denied and stay of hearing upon the order to show cause herein vacated. Proceed accordingly.